**Scot M. HALVERSON, Plaintiff,**

v.

**IOWA DISTRICT COURT FOR DECATUR COUNTY,**
**Defendant.**

**No. 93–1867.**

Supreme Court of Iowa.

May 24, 1995.

Scot M. Halverson, Leon, pro se.

Thomas J. Miller, Atty. Gen., Robert P. Ewald, Asst. Atty. Gen., and Robert L. Fulton, County Atty., for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and SNELL, JJ.

LAVORATO, Justice.

In this certiorari action, an attorney challenges the district court's rulings reducing his attorney fee award for representing an indigent defendant in a criminal case. The attorney raises three issues challenging the authority of several district court judges who set hearings and issued orders after the original fee award.

First, the attorney believes the district court acted illegally in setting aside the original order awarding attorney fees. Second, he contends that the district court illegally asserted appellate or certiorari power when it entered rulings after the original order. *See* Iowa Code §§ 602.6101 ("The district court has exclusive, general, and original jurisdiction of all actions, proceedings, and remedies, civil, criminal, probate, and juvenile, except in cases where exclusive or concurrent jurisdiction is conferred upon some other court, tribunal, or administrative body.");

602.6102 ("The district court has jurisdiction in appeals and writs of error taken in civil and criminal actions and special proceedings authorized to be taken from tribunals, boards, or officers under the laws of this state....") (1993). Last, he believes the district court cannot reduce a court appointed attorney fee award based on a client's change of heart to plead guilty rather than to stand trial.

We conclude the district court did not act illegally in any of its rulings. We annul the writ.

I. *Background Facts.*

On April 9, 1993, the State charged Kathy Mae Overton in a four-count complaint. Counts I and II charged lascivious acts with a child, class D felonies. Counts III and IV charged second-degree sexual abuse, class B felonies. On the same date a magistrate appointed Scot M. Halverson as Overton's counsel on her "application for appointment of counsel and financial statement." On May 21 the State filed a trial information against Overton and alleged the same counts.

Halverson has been in practice since 1986. He testified that in his career he has handled between 300 and 400 criminal cases. About thirty of these were jury trials.

Halverson appeared at Overton's May 21 arraignment as her counsel. The court set her trial for August 3. Halverson began preparing for trial, exploring several theories.

On June 16 Overton expressed to the court her dissatisfaction with Halverson's representation through a letter. She requested his removal and the appointment of another lawyer as substitute counsel.

On July 16 the district court appointed new counsel for Overton and continued the trial date to August 17. On July 30 the court again continued the trial to August 31.

On August 27 Overton pleaded guilty to one count of sexual abuse in the second degree.

## II. *Background Proceedings.*

Halverson applied ex parte for attorney fees on September 24. He asked for $2772. District Judge Peter Keller approved Halverson's fee application in full on the same date.

On October 8 the district court sentenced Overton. On the same day her new lawyer applied for attorney fees. District Judge Michael Streit approved the attorney fees and expenses in the amount of $1822.40.

On the same day, Judge Streit set aside Judge Keller's order of September 24 in which Judge Keller approved Halverson's fee application in full. Judge Streit's reason for doing so was because the "State wants [a] hearing." Judge Streit then set a hearing on Halverson's fee application for October 22.

On October 22 District Judge James Brown entered the following order:

> A hearing was held on October 22, on attorney Halverson's app. for fees. No evidence was presented. The court has examined the application and finds, under the circumstances, the preparation time spent was excessive. The reasonable time for in-court appearances is found to be 2.15 hours (the amount claimed) at $60 per hour, or $129.00. The reasonable time for out-of-court preparation is found to be 23.25 hours at $50 per hour, or $1162.50. The total fee approved is $1291.50.

On November 3 Halverson filed a "motion to amend and enlarge and motion for new hearing." In essence the motions requested an order reinstating Judge Keller's order or in the alternative a new hearing on fees. District court Judge Dale B. Hagen set the hearing on these motions for November 19.

Judge Streit conducted the November 19 hearing. Halverson testified in his own behalf. In a ruling from the bench, Judge Streit declined to modify Judge Brown's order reducing Halverson's fee.

Halverson then filed this petition for a writ of certiorari, which we granted in a single-justice ruling.

## III. *Scope of Review.*

 A petition for a writ of certiorari is proper when the district court "is alleged to have exceeded its jurisdiction or to have acted illegally." *Grant v. Iowa Dist. Court,* 492 N.W.2d 683, 685 (Iowa 1992) (citation omitted). We review certiorari actions at law. *Zimmermann v. Iowa Dist. Court,* 480 N.W.2d 70, 74 (Iowa 1992).

## IV. *Was the Order Setting Aside the Original Order Awarding Halverson Attorney Fees Illegal?*

A. *Applicable law.* Iowa Code section 815.7 (1991) applies to fees paid to counsel appointed in criminal cases. The statute pertinently provides that

> [a]n attorney appointed by the court to represent any person charged with a crime in this state shall be entitled to a reasonable compensation which shall be the ordinary and customary charges for like services in the community to be decided in each case by a judge of the district court. . . .

Iowa Code § 815.7.

One must read this language in tandem with our supervisory order, issued in 1985, pertinently stating that "[a] copy of the application [for attorney fees] *shall* be provided to the county attorney." 1985 Iowa Sup.Ct.Supervisory Order, *In re Costs of Court–Appointed Counsel,* § 5(a) [hereinafter Supervisory Order] (emphasis added).

In 1988 the legislature created the office of the state public defender. *See* 1988 Iowa Acts ch. 1161, § 2. In 1991 the legislature authorized the state public defender

> to review any claim made for payment of indigent defense costs and to request a hearing before the court granting a claim within thirty days of receipt of such claim if the state public defender believes the claim to be excessive.

1991 Iowa Acts ch. 268, § 411. This provision was in effect when Halverson filed his application for attorney fees and was codified in the 1993 Iowa Code at section 13B.4(4).

Iowa Code section 13B.4(4) was amended in 1994 and now pertinently reads:

> 4. The state public defender is authorized to review any claim made for payment of indigent defense costs if the state

public defender believes the claim to be excessive.

*a.* If the claim is from a noncontract attorney, the state public defender shall request a hearing before the court granting the claim as to the reasonableness of the claim within thirty days of receipt of such claim.

*See* 1994 Iowa Acts ch. 1187, § 17. This language is now codified in the 1995 Iowa Code at section 13B.4(4)(a).

■ B. *The merits.* Halverson's argument in the district court and his argument here is this. Before enactment of section 13B.4(4), county attorneys had the right to become involved in resisting payment of court appointed attorneys for indigents. Because the county paid the fees, the county had the right to object to the cost of court appointed attorney services through the county attorney, its legal officer. The county was therefore entitled to notice and hearing when indigent fee applications were filed. *See State v. Iowa Dist. Court,* 286 N.W.2d 22, 25 (Iowa 1979).

The State, Halverson's argument continues, now has assumed the cost of indigent defense. As a representative of the State, the county attorney retained the right to object to such cost and the State through the county attorney was entitled to notice and hearing. The 1985 Iowa supreme court supervisory order—which remains unchanged—recognized this right. But the legislature by virtue of section 13B.4(4) has now specifically given the state public defender, as a representative of the State, the right to notice and hearing on such applications and the right, of course, to contest the reasonableness of the indigent fee requests. The county attorney therefore no longer has the right to contest such indigent fee requests and is no longer entitled to notice and hearing on these requests. Because there was no request for hearing from the state public defender, Judge Keller's order was valid and could not therefore be set aside by another district court judge. In these circumstances when Judge Streit set aside Judge Keller's order, he was acting illegally because Judge Streit had no authority to do so.

For reasons that follow, we disagree with Halverson's argument. There is no hint in section 13B.4(4) that it supersedes or renders invalid our 1985 supervisory order. Our order is still valid. So attorneys filing fee applications for representing indigent defendants must still give the county attorney a copy of the application. And the law that led to this requirement of notice to the county attorney is still good law. *See* Supervisory Order (notice of hearing to determine compensation for representing indigent defendants must be given to county attorney, and county through county attorney has right to participate and present evidence at hearing to determine such compensation if county chooses to do so).

We see good reason to continue this practice even though (1) the State rather than the county bears the cost of indigent defense in criminal cases, and (2) section 13B.4(4) gives the state public defender the right to intervene if that public official thinks the fee is excessive. The county attorney represents the State in criminal cases. *See* Iowa Code §§ 331.756(1), (2), and (3) (1991). Any proceeding to determine compensation for representing indigent criminal defendants is ancillary to the principal criminal case. *Furey v. Crawford County,* 208 N.W.2d 15, 18 (Iowa 1973). Logically, then, the ideal official to represent the State—the party bearing the cost of such compensation—is the very official who represented the State in the criminal case: the county attorney. Besides being a legal representative of the State, the county attorney "would be familiar with the criminal case handled by the court-appointed counsel." *State v. Iowa Dist. Court,* 286 N.W.2d at 25.

■ We hold, then, that attorneys seeking compensation for representing indigent criminal defendants must give two notices of their fee application: one to the county attorney under our 1985 supervisory order and one to the state public defender under section 13B.4(4). The State through either the county attorney or the state public defender has the right to demand a hearing and at that hearing to present evidence to determine such compensation. Here Halverson made no showing that he gave either official

such notice. Although section 13B.4(4) does not say so, the section certainly contemplates that noncontract attorneys filing indigent fee applications must give the state public defender notice of the applications. And, as we said, we require such notice under this section.

▮ Iowa Code section 815.7 provides the statutory authority for the district court to decide what the fee should be for attorneys representing indigent criminal defendants. Although the proceeding to decide such fees is ancillary to the principal criminal case, the proceeding is civil in nature. The procedure to obtain appellate review of the fee supports this conclusion. The attorney may not on direct appeal of the criminal case secure review of the fee. Rather, the attorney must petition this court for a writ of certiorari. *Furey*, 208 N.W.2d at 18–19 (interpreting Iowa Code section 775.5, predecessor to section 815.7). The petition for a writ of certiorari is in the name of the attorney and is against the Iowa district court. The case is not in the name of the state of Iowa and against a named defendant. In addition, in the fee proceeding, the attorney seeks money; the State does not seek a conviction against a named defendant. *Cf. LaRue v. Burns*, 268 N.W.2d 639, 641 (Iowa 1978) (judgment for costs against a defendant in a criminal case creates a civil and not a criminal liability). For all these reasons, we conclude that the Iowa rules of civil procedure govern the fee proceeding under section 815.7.

▮ We think Halverson's failure to give the required notices of his attorney fee application gave Judge Streit sufficient legal grounds to set aside Judge Keller's order. The judge's action in doing so was therefore not illegal. The Iowa rules of civil procedure provide the means to set aside a default or a judgment based on the default. For example, rule 236 provides that "the court may set aside a default or the judgment thereon, for mistake, inadvertence, surprise, excusable neglect or *unavoidable casualty*." Iowa R.Civ.P. 236 (emphasis added). The motion to set aside the default "must be filed promptly after the discovery of the grounds"

for the motion, "but not more than sixty days after entry of the judgment." *Id.*

We have said that "unavoidable casualty" in the rule means "some casualty or misfortune growing out of conditions or circumstances that prevented the party or his attorney from doing something that, except therefor, would have been done...." *Flexsteel Indus., Inc. v. Morbern Indus. Ltd.*, 239 N.W.2d 593, 596 (Iowa 1976) (citation omitted). In a case decided before rule 236, this court said a violation of a local custom and practice requiring notice to opposing counsel—who had appeared—constituted grounds to set aside a default. The court reached this result, concluding that such a violation constituted an "unavoidable casualty or misfortune preventing the party from prosecuting or defending." *Lunt v. Van Gorden*, 225 Iowa 1120, 1125, 281 N.W. 743, 746 (1938). Recently, we said that "the local custom and practice factual scenario of *Lunt* is covered under this ground" of "unavoidable casualty" in rule 236. *Central Nat'l Ins. Co. v. Insurance Co. of N. Am.*, 513 N.W.2d 750, 755 (Iowa 1994).

▮ Halverson's failure to give the required notices of his fee application constituted "unavoidable casualty" within the meaning of rule 236. The county attorney's request for a hearing was well within the sixty-day requirement of rule 236. Judge Keller entered his order setting Halverson's fee on September 24. Two weeks later on October 8 Judge Streit set it aside.

▮ We recognize that the county attorney did not couch his request for hearing as a "motion to set aside a default judgment." But Halverson can take no comfort in this failure because a label attached to a motion does not determine its legal significance. Rather, we look to the motion's content to determine the motion's real nature. *Iowa Elec. Light & Power Co. v. Lagle*, 430 N.W.2d 393, 395 (Iowa 1988) (motion to reconsider considered as a rule 179(b) motion). What the county attorney wanted was to have the fee award set aside so that the State could have a hearing on the reasonableness of Halverson's request. This desire is implicit in Judge Streit's notation in his order that the State wanted a hearing. What the

State wanted is, of course, exactly the kind of relief contemplated by rule 236. Judge Streit understood that because he gave the State the very relief contemplated by rule 236: the judge set aside the judgment for the fee based on an order secured in violation of a supervisory order and statute.

 Halverson complains because Judge Streit set aside Judge Keller's order without notice to Halverson. Rule 236 does require such notice. *See* Iowa R.Civ.P. 236 ("On motion and for good cause shown, and upon such terms as the court prescribes, but not ex parte, the court may set aside a default or the judgment thereon . . . ."). Such failure is not fatal to the relief Judge Streit granted because Halverson was not prejudiced by the lack of notice. At the November 19 hearing on Halverson's motion to amend and enlarge and for new hearing, Halverson had the opportunity to, and did, argue the lack of such notice. His prayer in the motion reinforces our conclusion because he asked for an order reinstating Judge Keller's order or in the alternative a new hearing on his attorney fee application. Not only did Judge Streit give Halverson an opportunity to argue lack of notice on the judge's set-aside order, he also gave Halverson another hearing on his fee application.

During this hearing Judge Streit allowed Halverson to testify and to show what fee he was entitled to. Following Halverson's testimony, Judge Streit recited what Judge Brown had found and concluded that Halverson had presented nothing to challenge those findings. Judge Streit then entered a calendar entry noting that "Judge Brown's order stands."

V. *Did the District Court Illegally Assert Appellate or Certiorari Power When it Entered Rulings After the Original Fee Order?*

 Halverson has a backup argument. The State's only remedy was to appeal Judge Keller's order or petition for a writ of certiorari. Therefore, Judge Streit illegally exercised appellate jurisdiction in setting aside Judge Keller's order.

Our analysis in division IV answers this argument. Rule 236 provided the State all the relief it needed. There was no need for the State to appeal or petition for a writ of certiorari.

VI. *May the District Court Reduce Court Appointed Attorney Fees Because a Client Decides Not to Stand Trial and Pleads Guilty After Another Lawyer is Appointed?*

 Although it is not clear what Halverson argues as to this issue, we think he is raising the same matter he raised before Judge Streit at the November 19 hearing on his motion to amend and enlarge and motion for new hearing. In that hearing and in his motions, Halverson claimed that Judge Brown in reducing Halverson's fee "stated that $4500 total attorney fees were too high for a guilty plea and that the question was who should bear the loss." (Halverson's original fee was $2772 and the fee for the subsequent attorney was $1822.40.)

The clear import of Halverson's argument is that Judge Brown reduced Halverson's fee because his fees and the subsequent attorney's fees totaled $4500, an amount too high for a guilty plea. Halverson thinks the client rather than he should bear the loss as the legislature intended. *See* Iowa Code § 815.9A (1995) (requiring indigent defendant to pay back costs incurred for indigent defense).

The record does not bear out Halverson's contention. Judge Brown's order of October 22 reducing Halverson's fee states that a hearing was held but no evidence was presented. There is nothing in the record to suggest that Judge Brown reduced Halverson's fee because the total fee of $4500 was too high for a guilty plea. The record does not show that Judge Brown made such a statement. His order belies Halverson's allegation that any such statement was made.

Judge Brown makes it very clear why he reduced Halverson's fee: "[U]nder the circumstances, the preparation time spent was excessive." *See Hulse v. Wifvat,* 306 N.W.2d 707, 711 (Iowa 1981) (time spent is one of the factors a court must consider in determining reasonable compensation under section 775.5,

predecessor to section 815.7). Judge Brown's reason for reducing Halverson's fee was well within the law. He therefore did not act illegally.

### VII. *Disposition.*

We come to the following conclusions. First, Judge Streit did not act illegally in setting aside Judge Keller's order awarding Halverson $2772 in attorney fees. Because Halverson made no showing that he gave notice of his fee application to the county attorney and state public defender, Judge Streit had authority under rule 236 to set aside Judge Keller's order. Second, the State had no need to appeal from Judge Keller's order or to petition this court for a writ of certiorari. Rule 236 gave Judge Streit all the authority he needed to set aside Judge Keller's fee setting order. Therefore, Judge Streit did not act illegally by asserting appellate jurisdiction. Last, the record does not support Halverson's claim that Judge Brown reduced the fee because the total fee between the two attorneys in the amount of $4500 was too high for a guilty plea. Judge Brown reduced Halverson's fee because the preparation time Halverson spent on the case was excessive. In reducing the fee, Judge Brown was following case precedent and therefore did not act illegally.

For all these reasons, we annul the writ.

**WRIT ANNULLED.**