**In the Matter of MELODIE L., Alleged to be Seriously Mentally Impaired, Brandee Griffin, Appellant.**

No. 98–279.

Supreme Court of Iowa.

March 24, 1999.

As Corrected April 23, 1999.

John Sarcone, County Attorney, and Daniel L. Flaherty, Assistant County Attorney, for appellant.

Nancy L. Pietz of Cook, Gotsdiner, McEnroe & McCarthy, Des Moines, for appellee Melodie L.

Considered by LARSON, P.J., and LAVORATO, NEUMAN, SNELL, and CADY, JJ.

CADY, Justice.

This appeal challenges the authority of a judicial hospitalization referee to dismiss an involuntary hospitalization proceeding and release the patient from further hospitalization based upon an application filed by the patient. We conclude the referee was not authorized to grant relief.

### I. Background Facts and Proceedings.

Melodie L. has a long, unfortunate history of mental illness. She has been hospitalized for treatment of her illness numerous times since 1988. Her illness has occasionally produced assaultive behavior.

In November 1997, Melodie assaulted her case worker. The case worker responded by filing an application for Melodie's involuntary hospitalization. The hospitalization referee found Melodie to be seriously mentally impaired following a hearing. She was ordered to be committed to the care of a hospital. Melodie appealed the referee's decision to a district judge, who made the same finding and disposition following a trial. The case was returned to the referee for further proceedings.

Periodic medical reports submitted to the referee following the district court adjudication recommended Melodie receive further hospitalization for her mental illness. Eventually, a periodic medical report indicated Melodie's condition had improved. It recommended inpatient group home treatment. The referee responded to the report by entering an order for group home treatment. Melodie was transferred to a group home.

On December 30, 1997, Melodie filed an application with the hospitalization referee requesting to be released from further inpatient treatment. She desired outpatient treatment. The referee set the application for a hearing on January 12, 1998. A new medical report was not submitted following the court-ordered group home treatment.

Following the hearing on Melodie's request to be released, the referee discharged Melodie from treatment and dismissed the case. The referee found insufficient evidence to show Melodie continued to be seriously mentally impaired.

The county attorney, on behalf of the case worker, filed an appeal to a district judge. The district court dismissed the action for lack of subject matter jurisdiction. The district court ruled the statute governing hospitalization of the mentally ill did not permit an applicant to file an appeal from a decision by the referee. The applicant then filed an appeal to this court both from the district court order and the order by the referee. The notice of appeal was filed within thirty days of the date the referee entered the dismissal order.

The applicant claims the hospitalization referee had no authority to release a patient based upon an application for release filed by the patient, but is only permitted to take such action in response to a medical report submitted to the court. Melodie claims the applicant failed to challenge the referee's jurisdiction to hear the application at the time of the hearing, and failed to preserve the issue for our review. She also claims an applicant has no right to an appeal.

## II. Standard of Review.

An involuntary hospitalization proceeding is triable as an ordinary action at law. *In re Oseing*, 296 N.W.2d 797, 800 (Iowa 1980). Our review is for errors at law. *B.A.A. v. University of Iowa Hosps.*, 421 N.W.2d 118, 120 (Iowa 1988).

## III. Preservation of Error.

Melodie first claims the applicant failed to preserve error by objecting to the jurisdiction of the referee at the hearing. We recognize subject matter jurisdiction may be raised at any time, even for the first time on appeal. *Christie v. Rolscreen Co.*, 448 N.W.2d 447, 450 (Iowa 1989). Therefore, we reject Melodie's claim that the applicant failed to preserve error.

## IV. Jurisdiction.

Melodie next claims an applicant has no statutory right to appeal a decision of the referee to a district judge. She claims an applicant must file a new petition for involuntary hospitalization if dissatisfied with the dismissal of a case by the referee.

We agree with the district judge that the governing statute does not give an applicant a right to appeal to a district judge from an order by the referee. Instead, that right is reserved to the patient. Iowa Code § 229.21(3) (1997). Furthermore, it only applies to appeals from orders by the referee finding a patient to be seriously mentally impaired. *Id.* Thus, the district judge in this case properly dismissed the appeal. It had no subject matter jurisdiction to hear the matter.

Notwithstanding, this case comes before us on a notice of appeal not only from the decision of the district court, but also the decision of the hospitalization referee. This notice of appeal was timely filed within thirty days of the dismissal order entered by the referee. Thus, we must decide if we properly acquired jurisdiction to consider the issues presented through the timely notice of appeal from the order of the referee.

The right to appeal is strictly governed by statute. *See James v. State*, 479 N.W.2d 287, 290 (Iowa 1991). The hospitalization statute does not specifically authorize an applicant to appeal. However, the hospi-

talization process is a civil proceeding under the jurisdiction of the district court. Under our appellate rules, a final civil judgment of the district court may be appealed to the supreme court. Iowa R.App. P. 1(a). Therefore, we must decide if the dismissal order by the referee constituted a final judgment of the district court for the purposes of an appeal.

We have previously considered whether juvenile court referees and probate referees could issue final decisions for the purpose of appeal. In *In re D.W.K.*, 365 N.W.2d 32 (Iowa 1985), we held that a juvenile court referee had concurrent jurisdiction to issue a final decision for the purposes of appeal since our legislature, in defining the authority of a referee, specified the referee had "the same jurisdiction to ... issue orders ... as the judge of the juvenile court." *D.W.K.*, 365 N.W.2d at 33–34. On the other hand, we found no direct appeal existed from a decision by a probate referee because the governing statute reflected no similar grant of concurrent jurisdiction. *In re Estate of Willis*, 418 N.W.2d 857, 859 (Iowa 1988). Instead, we held a party needed to first seek district court review of a decision of the probate referee before invoking appellate jurisdiction. *Id.*

Although jurisdiction over hospitalization proceedings exists with the district court, our legislature established hospitalization referees to assist the district court in discharging the general duties of the hospitalization process. It specifically provided that the orders issued by referees in the discharge of those duties have the "same force and effect as if ordered by a district judge." Iowa Code § 229.21(2). Furthermore, except for commitment orders under section 229.21(3), the legislature did not provide for district court review of orders entered by referees. This lack of review reveals that an order for dismissal by the referee constitutes a final judgment for the purposes of appeal. *See*

*D.W.K.*, 365 N.W.2d at 34. Thus, this case is properly before us to consider the authority of the referee to dismiss the case.[1]

## V. Jurisdiction of Referee to Dismiss.

### A. Background.

■ Courts possess only those jurisdictional powers conferred by our constitution or legislature. *State v. Ryan*, 351 N.W.2d 186, 187 (Iowa 1984); 20 Am.Jur.2d *Courts* § 58, at 375 (1995). This means a court must not only be empowered by the constitution or legislation to adjudicate the type of case before it, but must also be authorized to make the particular decision it is asked to render. Any unauthorized action taken by a court is void. *Wederath v. Brant*, 287 N.W.2d 591, 595 (Iowa 1980).

■ In interpreting the statutes governing the duties of the referee, we strive to give effect to legislative intent. *Krull v. Thermogas Co.*, 522 N.W.2d 607, 612 (Iowa 1994). We do this by considering what the legislature said, not by what it should or might have said. *Id.* Statutory authority must be expressly provided or exist by plain implication. *See Boomhower v. Cerro Gordo County Bd. of Adjustment*, 163 N.W.2d 75, 76 (Iowa 1968) (no right to appeal unless provided by statute, expressly or by plain implication); 20 Am.Jur.2d *Courts* § 43, at 363. We recognize some inherent authority of a court within the scope of its jurisdiction apart from its statutory authority. 20 Am. Jur.2d *Courts* § 43, at 363 (1995). However, it is not enough that power sought to be implied from a statute be convenient or desirable. *Mississippi Valley Sav. & Loan Ass'n v. L.A.D., Inc.*, 316 N.W.2d 673, 675 (Iowa 1982). It must be necessary and essential to carry out the purposes of the statute. *Id.*; 20 Am.Jur.2d *Courts* § 43, at 363 (implied authority necessary to administer justice efficiently, fairly, and economically).

---

1. We do not consider if the right to appeal would extend to other issues. *See generally* 53 Am.Jur.2d *Mentally Impaired Persons* § 73, at 525 (1996) (some jurisdictions recognize the right of the state to appeal a commitment order, others reserve that right to the person subject to the proceedings, while others limit the right to appeal from the denial of an involuntary com- mitment petition to cases that implicate fundamental questions of procedure even though the general remedy for denial of a petition is to begin the entire commitment procedure anew). Additionally, we recognize a petition for writ of certiorari would be available to an applicant to challenge the authority of a referee. *See* Iowa R. Civ. P. 306.

## B. Legislative Scheme.

Originally, jurisdiction over proceedings for involuntary hospitalization of persons with mental illness rested with a county commission of insanity. Iowa Code §§ 1458, 1459 (1860). Under this original legislative scheme, there were two ways a district court could acquire jurisdiction. The district court was authorized to hear appeals by patients from an adjudication of insanity by the commission. It was also authorized to hear habeas corpus petitions filed by confined patients.

Under our present statutory scheme for hospitalization of persons with mental illness, original jurisdiction exists with the district court. *Id.* § 229.6 (1997). The duties and responsibilities of the district court following the filing of a petition for involuntary hospitalization are enumerated in chapter 229. The chief judge of each judicial district, however, is authorized to appoint judicial hospitalization referees to "discharge all of the duties imposed upon the court by sections 229.7 to 229.22. . . ." *Id.* § 229.21(2). A patient found to be seriously mentally impaired by a referee, as with the former commission process, has a right to appeal to a judge of the district court. *Id.* § 229.21(3).

Similarly, our present scheme retained the habeas corpus proceeding. *Id.* § 229.37. This entitles a patient to a hearing before a district judge to challenge "the question of serious mental impairment" during the course of confinement. *Id.* Moreover, a finding of serious mental impairment at a habeas corpus hearing does not preclude a second hearing when the patient again alleges he or she is no longer seriously mentally impaired. *Id.* Our current system also provides for the appointment of a commission to inquire into complaints filed by parties who allege they are not seriously mentally impaired and are unjustly deprived of their liberty. *See id.* §§ 229.31–.36. The findings of the commission are then submitted to the district court to consider whether the patient should continue to be detained or be discharged. *Id.* § 229.33.

## C. Statutory Duties of Referee.

The duties delegated to a referee begin once a petition for involuntary hospitalization is filed. The referee is first empowered to review the petition and set it for hearing. Iowa Code § 229.7; Iowa Sup.Ct. R. for Involuntary Hospitalization 3. Once a hearing is set in response to a petition for involuntary hospitalization, the patient is required to be examined by a physician and a written medical report is required to be filed with the court. Iowa Code §§ 229.8(3)(b), 229.10. The opinions expressed in the medical report permit the court to either proceed with the hearing or dismiss the proceeding without a hearing. *Id.* § 229.10(3), (4).

A patient found seriously mentally impaired at the conclusion of the hospitalization hearing is required to be committed to the care of a hospital or other facility. *Id.* § 229.13. The commitment is indeterminate. *Id.* Periodic review of the commitment, however, is mandated and must be initiated by the submission of additional medical reports within specific periods of time. *Id.* §§ 229.14, .15.

Within fifteen days after the initial admission, the chief medical officer of the hospital or facility where the patient is committed is required to submit the first post-hearing written report to the court containing a recommendation for disposition. *Id.* § 229.13 The report must include one of four alternative findings. *Id.* § 229.14; *see* Iowa Sup.Ct. R. for Involuntary Hospitalization 25. These findings range from no further treatment to continued hospitalization. Iowa Code § 229.14. In each instance, the court is required to enter an order which may terminate the proceeding or approve the necessary treatment. *Id.*

At various periods of time following the entry of an order for continued hospitalization or treatment, additional medical reports are required to be submitted and reviewed by the court. *Id.* § 229.15. These reports generally explain the status of the condition and treatment, and the court is required to order the appropriate action to be taken in response to the report. *Id.* Furthermore, if the chief medical officer believes during the period of hospitalization or treatment that a

patient no longer requires care or treatment for a serious mental impairment, the patient may be tentatively discharged. *Id.* § 229.16. The chief medical officer then reports the discharge to the court, who is required to issue an order confirming the discharge and dismissing the proceeding. *Id.*

Our legislature has designated several events which may trigger a hearing following the initial hospitalization order. Generally, this occurs when a patient is transferred to a more restricted setting. *See id.* §§ 229.14(3), 229.15(2); *see also* Iowa Sup.Ct. R. for Involuntary Hospitalization 32. Furthermore, a patient may request a hearing in response to a medical decision to transfer the patient to a different hospital. Iowa Code § 229.15(4). However, other than the habeas corpus process under section 229.37 and the commission of inquiry provisions under sections 229.31–.36, there is no specific procedure which enables a patient to initiate a review of the commitment or request to be released. Instead, the physician charged with the care and treatment of the patient triggers the review procedure by submitting the required periodic medical report. *See id.* § 229.15.

This medical initiated review process is consistent with the legislative intent of chapter 229. Our legislature recognizes mental illness as a "continuing condition which is subject to wide and unpredictable changes in condition and fluctuations in reoccurrence and remission. . . ." *Id.* § 229.1A. To accommodate the complex nature of this medical condition, the hospitalization procedures established in chapter 229 recognize that the judgment of medical experts is important to help guide the process. *See Humphrey v. Cady,* 405 U.S. 504, 508, 92 S.Ct. 1048, 1052, 31 L.Ed.2d 394, 403 (1972) (statutory commitment procedures bring both expert medical opinion and judicial judgment to bear, and involve a mixture of medical and social or legal judgments). While expert opinions are not dispositive, they are normally neces-

sary to properly assess the criteria to determine serious mental impairment as well as to determine whether to retain or discharge a patient. 53 Am.Jur.2d *Mentally Impaired Persons* § 54, at 509 (1996). Consequently, at nearly every step of the hospitalization proceedings under chapter 229, our legislature provides for the submission of medical reports to the court to help guide the court's action.

■■■■■ Habeas corpus proceedings and the commission of inquiry procedure are the only exceptions to the physician initiated review. These procedures entitle a patient to challenge the commitment process at any stage, with some limitations on the commission proceedings, and are independent of the medical reporting process. They are not, however, within the enumerated powers of the referee. Furthermore, the statute does not provide for a patient to file a petition for release or dismissal. Thus, the application filed by Melodie in this case was actually a petition for habeas corpus.[2] *See Halverson v. Iowa Dist. Ct.,* 532 N.W.2d 794, 799 (Iowa 1995) (a label attached to a motion does not determine its legal significance). The legislature has not authorized a referee to hear habeas corpus requests, or to release and discharge a patient without the submission of a medical report.

Our decision today only addresses the applicant's challenge to the jurisdiction of a referee to dismiss a proceeding in response to a request by a patient. We are not faced with any challenge to the statute's failure to permit a patient to petition a referee for dismissal of the proceedings.

## VI. Conclusion.

We conclude the referee lacked jurisdiction to dismiss the action in response to an application for release filed by a patient. At the same time, we recognize the patient was released from hospitalization more than a

---

**2.** We recognize a technical distinction between subject matter jurisdiction and jurisdiction or authority of the court over a particular case or claim. *See Christie,* 448 N.W.2d at 450; *see also Linn County Sheriff v. Iowa Dist. Ct.,* 545 N.W.2d 296, 299 (Iowa 1996). Although a hospitalization referee has subject matter jurisdiction over

petitions for involuntary hospitalization, the referee has no jurisdiction to hear and determine habeas corpus petitions. Habeas corpus is a separate class of case over which the referee has no subject matter jurisdiction. *See* Iowa Code ch. 663.

year ago. We do not remand this case for further proceedings. Any further need for treatment would be available through a new, independent proceeding. Nevertheless, the issue presented is important but would evade review under the mootness doctrine if not resolved. *See Iowa Freedom of Info. Council v. Wifvat*, 328 N.W.2d 920, 922 (Iowa 1983). For that reason, we resolve the issue today for the purpose of guiding the future actions of judicial hospitalization referees. We otherwise dismiss the proceeding.

**AFFIRMED IN PART, REVERSED IN PART, AND DISMISSED.**