## IN THE COURT OF APPEALS OF IOWA

No. 19-0034
Filed August 21, 2019

IN THE MATTER OF J.E.,
Alleged to be Seriously Mentally Impaired,

J.E.,
      Respondent-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.

The respondent challenges the district court's order of continued involuntary inpatient commitment. **AFFIRMED.**

Christina M. Shriver, Waterloo, for appellant.

Thomas J. Miller, Attorney General, and Gretchen Kraemer, Assistant Attorney General, for appellee State.

Considered by Potterfield, P.J., and Doyle and May, JJ.

**POTTERFIELD, Presiding Judge.**

J.E. challenges the district court's order of continued involuntary inpatient commitment. J.E. maintains there is insufficient evidence to support the determination he is a present danger to himself or others and requires continued placement in an alternative care facility. "An involuntary hospitalization proceeding is triable as an ordinary action at law." *In re Melodie L.*, 591 N.W.2d 4, 6 (Iowa 1999). "Our review is for errors at law." *Id.*

J.E. has been involuntarily committed to the same 24-hour-care facility since 2013. During that time, J.E. has asked for and received a number of placement hearings.

Pursuant to Iowa Code section 229.15 (2018), the chief medical officer from the facility at which J.E. is committed completed a periodic report in October 2018. The report indicated J.E. remained seriously mentally impaired and needed full-time custody and care (though not in a hospital setting). The hospitalization referee entered an order continuing J.E.'s placement at the 24-hour-care facility. Pursuant to section 229.14A, J.E. requested a hearing for review of placement.

The hearing took place in November 2018.[1] Afterward, the judicial hospitalization referee found by clear and convincing evidence that J.E. remained seriously mentally impaired and in need of treatment and full-time custody. The referee noted:

> [J.E.] last had a placement hearing on June 16, 2018. As a result of that hearing Country View staff placed [J.E.] on a Medication Education Program. The results of that program were reported in

---

[1] We do not have a transcript of the hearing; it is unclear whether it was reported.

August, 2018. [J.E.] has serious medical issues including diabetes requiring daily shots and polydipsia which requires monitoring and restriction of fluid intake. [J.E.] clearly made efforts to be able to manage his medications during the time of the program. He learned to name his medications and to be able to state what they were prescribed for. However, despite his efforts he was only able to seek his medications without prompting fifty-three percent of the time. This is not sufficiently regular to keep him safe. He also continues to be irresponsible about his restricted fluid intake, stealing water and taking it to his room. Without supervision he is likely to consume too much liquid. His other behaviors which are barriers to [living] in a habilitation home include stealing things such as blankets and pillows from other patients and coming out of his room unclothed.

J.E. appealed the ruling to the district court, which affirmed the hospitalization referee's order, stating:

It is the court's determination that [J.E.] is unrealistic in his belief that he can continue to sell real estate and is able to live by himself. [J.E.] dresses inappropriately for the season and fails to follow a restricted diet as is necessary due to his diabetic condition. Additionally, he picks at his scalp and has caused numerous sores. Without proper reminders, he would fail to take his required medication. Although not violent or abusive, the above conditions make [J.E.] a danger to himself if he were not in a structured setting.

Although [J.E.] seems to concede that he is need of assistance to see to his daily needs, he is requesting a less secure facility to allow him to live on his own. Testimony was presented that four separate treatment providers have been contacted as alternative placements for [J.E.]. All four providers have refused to accept respondent due to medication and elopement issues.

The court further determines that [J.E.'s] commitment to Country View is appropriate unless or until a less restrictive alternative becomes available.

Here, J.E. challenges the sufficiency of the evidence to support the determination he is a present danger to himself and requires continued placement in an alternative care facility.

As of July 1, 2018, Iowa Code section 229.1(20)[2] provides:

> "Seriously mentally impaired" or "serious mental impairment" describes the condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:
> a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.
> b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.
> c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.
> d. Has a history of lack of compliance with treatment and any of the following apply:
> (1) Lack of compliance has been a significant factor in the need for emergency hospitalization.
> (2) Lack of compliance has resulted in one or more acts of serious physical injury to the person's self or others or an attempt to physically injure the person's self or other.

In other words, to support a finding of serious mental impairment, the State must prove "that the individual: (1) has a mental illness, (2) lacks 'sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment' because of the mental illness, and (3) is likely, if permitted to remain at liberty, to be a danger to self or others." *In re M.E.*, No. 16-1479, 2017 WL 1278321, at *3 (Iowa Ct. App. Apr. 5, 2017) (citing Iowa Code § 229.1(20)).

J.E. does not dispute he has a mental illness and lacks sufficient judgment to make responsible decisions with respect to his treatment. He focuses his argument on whether he presents a danger to himself or others and, as the State puts it, how that intersects with his placement given that J.E. is seeking a less

---

[2] *See* 2018 Iowa Acts ch. 1056, § 7 (adding paragraph (d) and subparagraphs (1) and (2)).

restrictive level of care. *See* Iowa Code § 229.1(20)(a)-(d). At the hearing before the district court, J.E. indicated his goal was to move into a group home setting and then, ultimately, to live independently.

J.E. is not able to satisfy his essential needs without assistance. *See id.* § 229.1(20)(c). Following his June 2018 indication that he wished to live independently in the community, the care facility put in place a medication education program for J.E., who was instructed to request his medication without prompting. From June 18 through August 14, J.E. asked for his medication—including insulin, on which J.E. is dependent—only 92 out of 174 times. Additionally, the director of behavioral health services at the facility where J.E. is committed testified J.E. "needs constant encouragement on dressing in the mornings so that he is appropriately dressed and areas covered." The director also discussed that J.E. is unaware when his blood sugar is low, so he fails to take corrective action; at its most severe, this could cause J.E. to go into a diabetic coma. J.E. also has issues with incontinence and requires staff intervention to clean himself and change his clothing. There is sufficient evidence to support the district court's determination J.E. remains seriously mentally impaired.

Because J.E. is seriously mentally impaired, it is up to the court to determine the appropriate placement for him. *See id.* § 229.14A(8). While J.E. would like to reside in a group home, the evidence established the care facility had contacted four habilitative homes, each of which denied placement for J.E. due to his issues with medication management and elopement. We cannot say the court erred in continuing J.E.'s placement in the 24-hour-care facility when

there is no evidence a group home would accept J.E.  Moreover, the court stated in its order that it determined J.E.'s commitment to the care facility "is appropriate unless or until a less restrictive alternative becomes available."  We understand this statement to mean that if a place in a group home becomes available for J.E., his placement could be modified.

Because sufficient evidence supports the district court's order of continued involuntary inpatient commitment, we affirm.

**AFFIRMED.**