· **James D. CHRISTIE and Ben F. Peterson, Appellants,**

v.

**ROLSCREEN CO., Appellee.**

No. 88–1598.

Supreme Court of Iowa.

Nov. 22, 1989.

Rehearing Denied Dec. 18, 1989.

Ted Breckenfelder and W. Michael Shinkle, Davenport, for appellants.

Mark J. Wiedenfeld of Grefe & Sidney, Des Moines, for appellee.

Considered by SCHULTZ, P.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

In this age discrimination suit, the defendant moved for a directed verdict at the close of the plaintiffs' evidence on three grounds: (1) the district court lacked subject matter jurisdiction of the cases because Illinois rather than Iowa law applied; (2) the plaintiffs had not filed their discrimination complaints with the Iowa Civil Rights Commission within the statutory period; and (3) the plaintiffs failed to prove prima facie cases of discrimination. The district court granted the motion as to the jurisdictional and statute of limitations grounds but found that the plaintiffs had established their prima facie cases.

On appeal the plaintiffs contend the district court erred in granting the motion, arguing that the district court had jurisdiction because the Iowa civil rights statute did apply and that the complaints were filed in time.

The defendant argues that the district court correctly decided both issues. However, if we find otherwise, the defendant urges us to uphold the district court's order sustaining the motion for directed verdict. In support of its request the defendant argues that, contrary to the district court's finding, the plaintiffs failed to establish their prima facie cases of discrimination.

We conclude the district court did not have authority to hear the plaintiffs' cases because the plaintiffs did not file them in the judicial district where the alleged discriminatory practice occurred. Accordingly, we affirm.

The two plaintiffs, James D. Christie and Ben F. Peterson, were employees of Pella Window, Co., Inc., (Pella) an Iowa corporation with its principal place of business in Rock Island, Illinois. Edgar A. Harrell owned the company, which distributed products manufactured by the defendant Rolscreen Co. (Rolscreen). Harrell operated the distributorship as a sole proprietorship until 1971 when the business was incorporated.

Rolscreen is an Iowa corporation with its principal place of business in Pella, Iowa. Rolscreen manufactures specialty construction products including windows, sunroofs, skylights, sliding glass doors, and folding doors. Rolscreen sells the products to its distributors under the trade name "Pella."

Christie, an Illinois resident, began working for Harrell in March 1963 as office manager and bookkeeper. As the business expanded, Christie's responsibilities grew until he became the secretary and controller of the company. Christie's responsibilities included collections, accounts payable and receivable, payroll, financial reports, tax returns, licenses, and insurance.

Peterson began working for Pella in May 1976. He is an Iowa resident who lives in Davenport. Peterson was responsible for the commercial sales of the entire Rolscreen territory serviced by Pella. This territory included eastern Iowa and western Illinois. Peterson's duties included preparing figures and estimates, shop drawings, and commercial sales contracts.

Two other individuals figured prominently in the events that triggered this lawsuit: Theresa Crowe and Terry Miller. Crowe was an assistant to Christie and Miller was an assistant to Peterson.

For several years Harrell had tried to sell Pella. Eventually he convinced Rolscreen to buy it. The purchase took place on December 27, 1985.

Rolscreen formed a subsidiary corporation, The New Pella Window Company (New Pella), to take over the assets of Pella and to operate the business as a going concern until Rolscreen could sell it. Rolscreen planned to divide the territory covered by Pella into smaller, more manageable ones.

After the events that triggered this lawsuit, Rolscreen succeeded in transferring the northwestern portion of the territory, consisting of counties in northeastern Iowa and southwestern Wisconsin, to another Rolscreen distributor operating out of Waterloo. In addition, Rolscreen transferred the southeastern portion to a Springfield, Illinois, distributor. The remaining portion, consisting of seven eastern Iowa counties and sixteen counties in west central Illinois, were transferred to New Pella. New Pella continued to operate out of Rock Island.

The purchase agreement called for Pella to terminate its operations and the employment of all its employees on December 31, 1985. The agreement contemplated that Rolscreen would then continue to operate the business as the New Pella Window Company, starting January 2, 1986.

Christie and Peterson were told on December 31, at the offices of Pella in Rock Island, that Rolscreen would not hire them. Instead, Rolscreen hired Crowe to do Christie's job and Miller to do Peterson's job. Christie and Peterson did not know this until after January 2. It was on that date that Crowe and Miller knew what their duties would be with the new company.

Both Crowe and Miller were younger than Christie and Peterson; Crowe was thirty-eight years old, Miller was twenty-four years old. Christie and Peterson were in their early fifties.

At the time that Pella terminated its operations, Crowe and Miller were making considerably less than their predecessors. Rolscreen hired Crowe and Miller at the same salaries they were receiving from Pella.

Christie and Peterson filed age discrimination complaints with the Iowa Civil Rights Commission on July 1, 1986. *See* Iowa Code § 601A.15(1) (1985). On December 17, 1986, Peterson received an administrative release (letter of right to sue) from the commission. *See* Iowa Code § 601A.16(2). And Christie received his administrative release on January 6, 1987.

On March 16, 1987, Christie and Peterson filed a combined petition against Pella and Rolscreen in Scott County district court. They alleged, among other things, employment discrimination based on age. Before trial, the two dismissed Pella with prejudice and proceeded to trial against Rolscreen only.

I. The district court treated the first ground raised in Rolscreen's motion for directed verdict as a "choice of law" issue and applied our "most significant relationship" test. Under the "most significant relationship" test,

the local law of the state having the most significant relationship with the occurrence and with the parties controls their rights, obligations and liabilities in tort. Considerations include: place of injury, place of conduct leading to the injury, domicile of the parties, and the place where any relationship between the parties is centered.

*Zeman v. Canton State Bank*, 211 N.W.2d 346, 349 (Iowa 1973). After weighing these various considerations, the district court found, as a matter of law, that Illinois had more significant contacts than Iowa. The court concluded, therefore, that it lacked subject matter jurisdiction of the two cases.

The issue here is not whether the district court lacked subject matter jurisdiction. Rather the issue is whether the court lacked authority to hear the two cases. Subject matter jurisdiction refers to "the authority of a court to hear and determine cases of the general class to which the proceedings in question belong, not merely the particular case then occupying the court's attention." *Wederath v. Brant*, 287 N.W.2d 591, 594 (Iowa 1980). Clearly, here, the district court had subject matter jurisdiction because Iowa Code section 601A.16(1) gave it such jurisdiction. Iowa Code § 601A.16(1) ("A complainant after the proper filing of a complaint with the commission, may subsequently commence an action for relief in the district court ...").

A court may have subject matter jurisdiction but for one reason or another may not be able to entertain the particular case. In such a situation we say the court lacks authority to hear that particular case. Sometimes we have referred to "lack of authority to hear the particular case" as lack of jurisdiction of the case. *See, e.g., City of Des Moines v. Des Moines Police Bargaining Unit*, 360 N.W.2d 729, 730

(Iowa 1985) ("The issue is technically not one of subject matter jurisdiction. A district court obviously has jurisdiction to entertain declaratory judgment actions. The issue is one of jurisdiction of the particular case. This is because a court lacks authority to entertain particular declaratory judgment suits in which its jurisdiction has not been properly invoked.").

A statute, like chapter 601A, that creates a cause of action and establishes procedures for enforcing that action provides an excellent example of how a court may have subject matter jurisdiction, yet lack the authority to hear a particular case. Such a statute gives the district court subject matter jurisdiction over the type of action the statute creates. By following the statutory procedures a party properly invokes the authority of the court to hear the case. A party who ignores one or more of the procedures does not invoke such authority. *See, e.g., Tombergs v. City of Eldridge*, 433 N.W.2d 731, 733–34 (Iowa 1988); *see also* Iowa Const., art. V, § 6 (giving district courts subject matter jurisdiction of civil and criminal matters subject to the legislature's authority to regulate how that jurisdiction is to be employed).

Subject matter jurisdiction can be raised at any time. *Richards v. Iowa Dep't of Revenue*, 414 N.W.2d 344, 349 (Iowa 1987). The basis for extending the "at any time" rule to cases in which the court has subject matter jurisdiction but lacks authority to hear the particular case might be subject to question. But up to now our cases have so extended it. *See City of Des Moines*, 360 N.W.2d at 730. *But see, Superior/Ideal v. Oskaloosa Bd. of Revenue*, 419 N.W.2d 405, 409 (Iowa 1988) (Carter, J., concurring specially) (suggesting that technical infirmities that would otherwise deprive the district court of authority to hear the case should be considered waived unless timely raised).

II. As we said, our civil rights statute—Iowa Code chapter 601A—provides a cause of action for discriminatory practices. So the statute gives the district court subject matter jurisdiction of such actions. Here the discriminatory practice alleged is the

refusal to hire because of age. *See* Iowa Code §§ 601A.17(1), 601A.16(1).

The legislature, however, has established certain procedures complainants must follow before they can properly invoke the authority of the district court to hear their cases. Several of these procedures are set out in section 601A.16:

1. A person claiming to be aggrieved by an unfair discriminatory practice must initially seek an administrative relief by filing a complaint with the commission.... A complainant after the proper filing of a complaint with the commission, may subsequently commence an action for relief in the district court if all of the following conditions have been satisfied:

a. The complainant has timely filed the complaint with the commission as provided in section 601A.15, subsection 12 [within one hundred eighty days after the alleged discriminatory or unfair practice occurred]; and

b. The complaint has been on file with the commission for at least one hundred twenty days and the commission has issued a release to the complainant....

We think another of these procedures is implicit in the definition of "court" in section 601A.2(1). That provision defines "court" as

the district court in and for the judicial district of the state of Iowa in which the alleged unfair or discriminatory practice occurred or any judge of said court if the court is not in session at that time.

Iowa Code § 601A.2(1). Reading section 601A.16(1) in light of this definition, we think a complainant must "commence an action for relief" in any one of the counties of the judicial district where the alleged discriminatory practice occurred.

Chapter 601A also has its own venue provision, which is found in section 601A.16(4). This section provides:

Venue for an action shall be in the county in which the respondent resides or has its principal place of business, or in the county in which the alleged unfair or discriminatory practice occurred.

At first blush, there is an apparent inconsistency between this section and the definition of court in section 601A.2(1).

We think, however, there is a reasonable and logical way to harmonize these two provisions. Section 601A.16(4) is a special venue provision for the judicial district where the alleged discriminatory practice occurred. For example, if such a practice occurred in the seventh judicial district, venue would be proper in any county of that district in which the respondent resides or has its principal place of business, or where the alleged discriminatory practice occurred.

■ Because section 601A.16(4) is a venue provision it is subject to Iowa Rule of Civil Procedure 175. Under rule 175 an infirmity in venue is waived unless the defendant, before answer, moves to transfer the case to the proper county. Iowa R.Civ.P. 175(a). So if a civil rights action is filed in the right district but in the wrong county, the plaintiff can still prosecute the action there unless the defendant, before answer, moves to transfer the case.

■ Here, however, venue is not the issue. The evidence suggests, at most, that the alleged discriminatory act occurred either in Pella, Iowa or in Rock Island, Illinois. Neither place, of course, is in the seventh judicial district. The seventh judicial district—where Peterson resides and where the petition was filed—has no connection whatsoever with the case in terms of either section 601A.2(1) (definition of court) or section 601A.16(4) (venue).

Consequently, when Christie and Peterson filed their petition in Scott County they did not properly invoke the authority of the district court to hear their cases. The district court correctly sustained Rolscreen's motion for directed verdict, not because the court lacked subject matter jurisdiction but because it lacked authority to hear the cases.

III. In view of the result we reach in division II there is no need for us to consider the statute of limitations issue. Nor do we need to consider Rolscreen's contention

that Christie and Peterson failed to prove their prima facie cases of discrimination.

AFFIRMED.