IN THE SUPREME COURT OF IOWA

 No. 109 / 04-0815

 Filed February 3, 2006

STATE OF IOWA,

 Appellee,

vs.

MARY JANE WIEDERIEN,

 Appellant.

 Appeal from the Iowa District Court for Dallas County, Peter A.
Keller, Judge.

 Defendant appeals from an order continuing a no-contact order under
Iowa Code section 708.12(2) (2003) after the court acquitted her of the
underlying harassment charge. REVERSED AND CASE REMANDED.

 Christopher Kragnes, Sr., and Tiffany Koenig of Kragnes, Tingle &
Koenig, P.C., Des Moines, for appellant.

 Thomas J. Miller, Attorney General, Kristin Guddall, Assistant
Attorney General, Wayne Reisetter, County Attorney, and Stacy Ritchie,
Assistant County Attorney, for appellee.

WIGGINS, Justice.
 The State charged the defendant with harassment under Iowa Code
section 708.7(4) (2003). At the initial appearance, the court issued a no-
contact order requiring the defendant not to have contact with the alleged
victim. The district court acquitted the defendant of the charge but
continued the no-contact order pursuant to section 708.12(2). Because we
find the court does not have the authority to extend a no-contact order
under section 708.12(2) after an acquittal, we reverse the judgment of the
district court and remand the case for the court to issue judgment
consistent with this opinion.
 I. Background Facts and Proceedings.
 The State charged Mary Jane Wiederien with harassment in the third
degree under Iowa Code section 708.7(4). The alleged harassment involved
her conduct towards her physician. The affidavit attached to the complaint
alleged Wiederien contacted her physician’s office via mail and fax,
appeared to be following her physician, and filed a complaint against her
physician with the Iowa Board of Medical Examiners. At Wiederien’s initial
appearance, the magistrate issued a no-contact order under section
708.12(1) ordering Wiederien to have no contact with her physician.
 After a bench trial, the magistrate found Wiederien not guilty of
harassment in the third degree due to the State’s failure to prove intent
to harass. Even though the magistrate found Wiederien not guilty of the
criminal charge, he found Wiederien’s physician “had a legitimate right to
feel nervous and afraid,” and continued the no-contact order for two years
from the original issue date, with a limited exception allowing Wiederien
to visit her physician’s neighbors.
 Wiederien appealed the magistrate’s continuation of the no-contact
order to the district court, claiming the magistrate could not continue the
no-contact order upon a finding of not guilty. The district court affirmed
the magistrate’s decision. Wiederien appeals.
 II. Issue.
 Wiederien claims “[w]hen a defendant is found not guilty, the court’s
jurisdiction ends; therefore, the court no longer has the authority to
continue a no contact order.” We distinguish the court’s lack of subject
matter jurisdiction from the court’s lack of authority to hear a case.
Christie v. Rolscreen Co., 448 N.W.2d 447, 450 (Iowa 1989). “A
constitution or a legislative enactment confers subject matter jurisdiction
on the courts.” In re Estate of Falck, 672 N.W.2d 785, 789 (Iowa 2003).
The Iowa Code gives the district court subject matter jurisdiction to enter
a no-contact order against a defendant who is prosecuted for harassment.
Iowa Code § 708.12(1)-(2).
 “ ‘[L]ack of authority to hear [a] particular case,’ ” also referred
to as “lack of jurisdiction of the case,” occurs when the court has subject
matter jurisdiction but may not be able to act in a particular case for
some reason. Christie, 448 N.W.2d at 450. The crux of Wiederien’s appeal
is that section 708.12(2) did not give the magistrate authority to continue
a no-contact order after the court acquits the defendant of the underlying
harassment charge. Consequently, we will determine whether the magistrate
had the authority to continue the no-contact order after he acquitted
Wiederien on the charge of harassment.
 III. Scope of Review.
 We must interpret Iowa Code section 708.12 to determine whether the
district court has the authority to continue a no-contact order after it
acquits a defendant on the underlying harassment charge. Because
Wiederien’s appeal raises a question of statutory interpretation, our
review is for correction of errors at law. State v. Wolford Corp., 689
N.W.2d 471, 473 (Iowa 2004).
 IV. Analysis.
 The Code provides:

 When a person arrested for harassment in violation of section
 708.7 . . . is brought before a magistrate for initial
 appearance . . . and the magistrate finds probable cause to believe
 that a violation of section 708.7 . . . has occurred and that the
 presence of or contact with the defendant poses a threat to the safety
 of the alleged victim, persons residing with the alleged victim, or
 members of the alleged victim’s immediate family, the magistrate shall
 enter an order which shall require the defendant to have no contact
 with the alleged victim, persons residing with the alleged victim, or
 members of the alleged victim’s immediate family, and to refrain from
 harassing the alleged victim, persons residing with the alleged
 victim, or members of the alleged victim’s immediate family, in
 addition to any other conditions of release determined and imposed by
 the magistrate under section 811.2.

Iowa Code § 708.12(1). The Code further provides:

 The order has force and effect until it is modified or terminated by
 subsequent court action in a contempt proceeding or the criminal or
 juvenile court action and is reviewable in the manner prescribed in
 section 811.2. Upon final disposition of the criminal or juvenile
 court action, the court shall make a determination whether the no-
 contact order should be modified or terminated. If a defendant is
 convicted for, receives a deferred judgment for, or pleads guilty to a
 violation of section 708.7 . . . the court shall modify the no-contact
 order issued by the magistrate to provide that the no-contact order
 shall continue in effect for a period of five years from the date that
 the judgment is entered or the deferred judgment is granted,
 regardless of whether the defendant is placed on probation.

Id. § 708.12(2) (emphasis added).
 When confronted with the task of statutory interpretation, we have
stated:

 The goal of statutory construction is to determine legislative intent.
 We determine legislative intent from the words chosen by the
 legislature, not what it should or might have said. Absent a
 statutory definition or an established meaning in the law, words in
 the statute are given their ordinary and common meaning by considering
 the context within which they are used. Under the guise of
 construction, an interpreting body may not extend, enlarge or
 otherwise change the meaning of a statute.
Auen v. Alcoholic Beverages Div., 679 N.W.2d 586, 590 (Iowa 2004)
(citations omitted).
 We resort to “the rules of statutory construction only when the terms
of [a] statute are ambiguous.” IBP, Inc. v. Harker, 633 N.W.2d 322, 325
(Iowa 2001). If reasonable persons can disagree on a statute’s meaning, it
is ambiguous. State v. Ahitow, 544 N.W.2d 270, 272 (Iowa 1996).
“Ambiguity may arise in two ways: (1) from the meaning of particular
words; or (2) from the general scope and meaning of a statute when all its
provisions are examined.” Holiday Inns Franchising, Inc. v. Branstad, 537
N.W.2d 724, 728 (Iowa 1995).
 Section 708.12 is ambiguous because it is susceptible to two meanings.
 We could interpret the word “disposition” in section 708.12(2) to
encompass an acquittal; in such a case, the court would have the authority
to extend the no-contact order upon Wiederien’s acquittal. An alternative
interpretation could be made based on the language in section 708.12(2),
which specifically sets forth a framework to continue the no-contact order
when a defendant’s guilt is established but fails to provide any framework
when the defendant is acquitted. This language could evidence a
legislative intent that the court does not have the authority to continue
the no-contact order when it acquits the defendant. In this instance, we
could conclude the legislature used the word “disposition” to encompass a
finding of delinquency in a juvenile court action as well as a conviction
in a criminal proceeding.
 When we find an ambiguity, we have stated:

 To resolve the ambiguity and ultimately determine legislative
 intent, we consider (1) the language of the statute; (2) the objects
 sought to be accomplished; (3) the evils sought to be remedied; and
 (4) a reasonable construction that will effectuate the statute’s
 purpose rather than one that will defeat it.
State v. Green, 470 N.W.2d 15, 18 (Iowa 1991). We do not interpret a
statute so broadly that our interpretation “threaten[s] the constitutional
due process prohibitions against vagueness and uncertainty.” State v.
Pace, 602 N.W.2d 764, 771 (Iowa 1999).
 The Due Process Clause of the Fourteenth Amendment to the United
States Constitution prohibits vague statutes. State v. Reed, 618 N.W.2d
327, 332 (Iowa 2000). A statute is void for vagueness if it lacks clearly
defined prohibitions. Grayned v. City of Rockford, 408 U.S. 104, 108, 92
S. Ct. 2294, 2298, 33 L. Ed. 2d 222, 227 (1972). The values protected by
the void-for-vagueness doctrine are:

 First, because we assume that man is free to steer between lawful and
 unlawful conduct, we insist that laws give the person of ordinary
 intelligence a reasonable opportunity to know what is prohibited, so
 that he may act accordingly. Vague laws may trap the innocent by not
 providing fair warning. Second, if arbitrary and discriminatory
 enforcement is to be prevented, laws must provide explicit standards
 for those who apply them. A vague law impermissibly delegates basic
 policy matters to policemen, judges, and juries for resolution on an
 ad hoc and subjective basis, with the attendant dangers of arbitrary
 and discriminatory application. Third, but related, where a vague
 statute “abut[s] upon sensitive areas of basic First Amendment
 freedoms,” it “operates to inhibit the exercise of [those] freedoms.”
 Uncertain meanings inevitably lead citizens to “ ‘steer far wider of
 the unlawful zone’ . . . than if the boundaries of the forbidden areas
 were clearly marked.”
Id. at 108-09, 92 S. Ct. at 2298-99, 33 L. Ed. 2d at 227-28 (alterations in
original) (citations omitted).
 Section 708.12(2) provides the court with the authority to extend a no-
contact order “[i]f a defendant is convicted for, receives a deferred
judgment for, or pleads guilty to a violation of section 708.7.” This
language clearly informs the court and the defendant under what
circumstances the court will extend a no-contact order. Section 708.12(2)
does not contain any similarly express standards or guidelines as to when
the court may extend a no-contact order when the court acquits a defendant.

 The magistrate continued the no-contact order because “the victim in
this case had a legitimate right to feel nervous and afraid.” Nowhere in
the statute did the legislature give the magistrate the authority to extend
a no-contact order on an acquittal when the victim felt nervous and afraid.
 The legislature’s failure to define the burden of proof and the
circumstances in which a court can extend a no-contact order after an
acquittal not only fails to give the defendant notice as to when the court
will extend the order, but also leads to an arbitrary and discriminatory
enforcement of the statute on an ad hoc and subjective basis. Therefore,
to avoid an interpretation of section 708.12(2) that jeopardizes the
constitutional due process proscriptions against vagueness and uncertainty,
we hold section 708.12(2) does not give the court the authority to continue
a no-contact order when the defendant is acquitted.
 V. Disposition.
 Because we hold Iowa Code section 708.12(2) does not give the court
the authority to continue a no-contact order when it acquits a defendant on
the harassment charge, we reverse the judgment of the district court and
remand the case for the court to issue judgment consistent with this
opinion.
 REVERSED AND CASE REMANDED.
 All justices concur except Cady, J., who dissents.
 #109/04-0815, State v. Wiederien
CADY, J. (dissenting).
 I respectfully dissent. The majority declares the existence of an
ambiguity in the statute based upon two possible interpretations, and
concludes we must adopt one interpretation over the other because the other
interpretation would render the statute unconstitutional. First, this
approach is based on the false premise that the interpretation according to
the plain language of the statute would be unconstitutional. Second, as a
method of statutory interpretation, it fails to consider other interpretive
aids and fails to scrutinize the language of the statute to reveal the
intent of our legislature. I believe we are required to interpret this
statute as it is written to permit courts to determine the duration of no-
contact orders at the conclusion of the underlying criminal case, including
those instances when the case concludes with acquittal. The failure to
interpret the statute in this manner means it is doomed to fail to achieve
its goal of protecting victims of harassment and stalking.
 The majority concludes the statute would be unconstitutional if
interpreted to permit courts to extend no-contact orders in the event of an
acquittal. The majority reasons this interpretation of the statute would
violate due process because such a grant of power to the court to continue
the no-contact order following an acquittal has no standard to support the
adjudication, while the statute is able to utilize the reasonable-doubt
standard from the criminal case to support the continuation of no-contact
orders in the event of a disposition involving guilt. In other words, the
perceived vagueness is overcome by the prior finding of guilt under the
reasonable-doubt standard. However, this approach overlooks that no-
contact orders under the statute are collateral matters to the underlying
criminal proceeding, entered by the court based upon a standard much less
exacting than the standard to support guilt in a criminal case. Thus, an
acquittal of the underlying criminal charge does not undermine or affect
the validity of the prior no-contact order, which is civil in nature and
based only upon a determination of probable cause and a need to protect the
safety of another. Surely, evidence that does not establish guilt beyond a
reasonable doubt and results in an acquittal in a criminal case can support
relief in a civil case. See State v. One Certain Conveyance, 316 N.W.2d
675, 678 (Iowa 1982) (“ ‘In criminal actions the burden of proof is “beyond
a reasonable doubt,” while in civil actions the burden is “proof by a
preponderance of the evidence.” Therefore, an acquittal in the former
action serves to show only that the government did not prove beyond a
reasonable doubt that the defendant committed the crime. This does not
mean that the more lenient civil burden of preponderance of the evidence
could not have been satisfied. Therefore, the government in a subsequent
civil action should not be precluded from attempting to prove an issue by a
preponderance of the evidence merely because it did not sustain the burden
of proof beyond a reasonable doubt.’ ” (quoting Allan D. Vestal, Issue
Preclusion and Criminal Prosecutions, 65 Iowa L. Rev. 281, 335 (1980))).
Moreover, due process is not offended because the statute fails to specify
a specific standard to support the continuance of a no-contact order under
one circumstance (acquittal), while it can rely on the criminal burden of
proof to support the continuance of a no-contact order under another
circumstance (guilt).
 We are obligated to presume statutes to be constitutional, and we are
further obligated to give them any reasonable construction possible to make
them constitutional. State v. Millsap, 704 N.W.2d 426, 436 (Iowa 2005);
see also State v. White, 545 N.W.2d 552, 557 (Iowa 1996) (stating a party
claiming a statute is void for vagueness “bears a heavy burden to show the
statute ‘clearly, palpably, and without a doubt, infringes the
constitution’ ” (citations omitted)); In re Hochmuth, 251 N.W.2d 484, 488-
89 (Iowa 1977) (“[A] statute otherwise unconstitutional because of
vagueness may be salvaged by a limiting interpretation which brings the
application of the statute within constitutional bounds.”). In this light,
it is permissible to draw upon other statutes to clarify how a statute
operates in order to save it from attack based on uncertainty. 1A Norman
J. Singer, Statutes and Statutory Construction § 21.16, at 226-28 (6th ed.
2002) [hereinafter Singer]; accord Merritt v. Council Bluffs Civil Serv.
Comm’n, 458 N.W.2d 867, 869 (Iowa Ct. App. 1990) (“[I]f a statute’s meaning
is fairly ascertainable by reference to . . . similar statutes, . . . then
a statute will not be considered unconstitutionally vague.” (citing State
v. McKee, 392 N.W.2d 493, 494 (Iowa 1986); Williams v. Osmundson, 281
N.W.2d 622, 625 (Iowa 1979))). This means we may look beyond the statute
to determine the standard of proof when it is absent from the statute.
Perez v. Cleveland, 678 N.E.2d 537, 540 (Ohio 1997) (citation omitted).
 In this case, the vagueness claim exists because the statute directs
the court to determine if the “no-contact order should be modified or
terminated” upon final disposition of the criminal case, but then fails to
specify a burden of proof. Iowa Code § 708.12(2). The majority is willing
to draw upon the criminal standard when the final disposition is based on
guilt to sidestep the statutory uncertainty, but is unwilling to further
draw upon the civil standard of a preponderance of the evidence applicable
to similar injunctions under the statute governing domestic abuse, as well
as injunctions in general. See id. § 236.4(1) (imposing preponderance-of-
evidence standard in domestic abuse proceedings where relief includes
protective orders); Kennedy v. Oleson, 251 Iowa 418, 421, 100 N.W.2d 894,
896 (1960) (burden of proof for an injunction is preponderance of
evidence); 42 Am. Jur. 2d Injunction § 265, at 848 (2000) (same). However,
under the standards applied to vagueness claims involving statutes
pertaining to civil matters, other than First Amendment claims perhaps, we
are obligated to read the appropriate standard of proof into the statute to
save it from attack. See MRM, Inc. v. City of Davenport, 290 N.W.2d 338,
344-45 (Iowa 1980) (“Ordinarily a ‘significantly higher’ standard of
certainty is required when a vagueness challenge is made in the context of
a criminal prosecution than in situations involving civil remedies.”
(citing Williams, 281 N.W.2d at 625; Knight v. Iowa Dist. Ct., 269 N.W.2d
430, 432 (Iowa 1978); State ex rel. Turner v. Koscot Interplanetary, Inc.,
191 N.W.2d 624, 629 (Iowa 1971))); accord Winters v. New York, 333 U.S.
507, 515, 68 S. Ct. 665, 670, 92 L Ed. 840, 849 (1948) (“The standards of
certainty in statutes punishing for offenses is higher than in those
depending primarily upon civil sanction for enforcement.”).
 This means we can safely declare that the preponderance-of-the-
evidence standard applies under the statute to guide the court in its
statutory obligation “upon final disposition in a criminal or civil action”
to “make a determination whether the no-contact order should be modified or
terminated.” Iowa Code § 708.12(2). Moreover, this preponderance-of-the-
evidence standard applies whether the final disposition is an acquittal or
some form of guilt.[1] Thus, under the statute, the court considers the
evidence presented in the criminal or juvenile proceeding to decide if the
no-contact order should be modified or terminated in accordance with those
standards applicable to continuing, modifying, or dissolving other
injunctions. See Uncle B’s Bakery, Inc. v. O’Rourke, 938 F. Supp. 1450,
1459 (N.D. Iowa 1996) (court would not vacate temporary injunction unless
there no longer was any threat of harm). The task in this case is not to
declare the statute to be unconstitutional but to strive to give it a
construction to uphold it, rather than to defeat it.
 In addition to its vagueness reasoning, the majority also bases its
conclusion on the speculation that the legislature’s failure to include a
“framework to continue the no-contact order” upon an acquittal “could
evidence a legislative intent that the court does not have the authority to
continue the no-contact order when it acquits the defendant.” The principle
of statutory interpretation impliedly relied on by the majority is
expressio unius est exclusio alterius. See Black’s Law Dictionary 1635
(7th ed. 1999) (defining the maxim as “[t]he expression of one thing is the
exclusion of another”); accord Locate.Plus.Com, Inc. v. Iowa Dep’t of
Transp., 650 N.W.2d 609, 618 (Iowa 2002) (“Generally, the express mention
of one thing in a statute implies the exclusion of others.” (citing
Callender v. Skiles, 591 N.W.2d 182, 186 (Iowa 1999))). It means that when
a statute designates its manner of performance and operation as to one set
of facts, there is an inference that all omissions are understood as
exclusions. 2A Singer § 47.23, at 304-07; see, e.g., Dotson v. City of
Ames, 251 Iowa 467, 472, 101 N.W.2d 711, 714 (1960) (“[B]y granting control
over animals running at large the legislature has clearly excluded power
over those confined.”). As applied to this case, this maxim would mean
that because section 708.12 provides the specific circumstances when a no-
contact order is required to be continued for five years, the legislature
impliedly intended to prohibit the continuation of the order in any other
circumstance. This maxim, on the surface, tends to support the result
reached by the majority.
 Yet, the maxim is only a rule of statutory construction; it is not a
rule of law. See 2A Singer § 47:23, at 315 (“This rule is a rule of
statutory construction and not a rule of law.”); id. §47:24, at 319 (“It
acts merely as an aid to determine legislative intent and does not
constitute a rule of law.”); id. § 47:25, at 325-26 (“ ‘The maxim . . .
requires great caution in its application, and in all cases is applicable
only under certain conditions.’ ”); id. § 47:25, at 332 (“The maxim is not
a rule of substantive law but one of statutory construction and thus should
be used with care.”). Moreover, the application of the maxim in this case
would render the following sentence in the statute a nullity: “Upon final
disposition of the criminal or juvenile court action, the court shall make
a determination whether the no-contact order should be modified or
terminated.” Iowa Code § 708.12(2). “ ‘It is an elementary rule of
construction that effect must be given, if possible, to every word, clause
and sentence of a statute.’ ” 2A Singer § 46:06, at 181; accord Miller v.
Marshall County, 641 N.W.2d 742, 749 (Iowa 2002) (“Each term [in a statute]
is to be given effect, so that no single part is rendered insignificant or
superfluous.” (Citation omitted.)). If the legislature only intended no-
contact orders to be modified by requiring them to be continued for five
years, and that this action only could be taken in the event of a
disposition of guilt, there would be no reason to include the preceding
sentence directing the court to decide if no-contact orders entered at the
initial appearance should be continued upon final disposition of the
underlying case. We are obligated to give effect to all provisions in
interpreting the statute. Id.; 2A Singer § 46:06, at 181.
 From my reading of section 708.12, it is apparent that the
legislature wanted the court to determine the duration (and make any
modification) of all no-contact orders in all instances at the conclusion
of the underlying case. Certainly, the safety of others was the paramount
concern of the legislature in providing for a no-contact order, and this
concern supports this approach. Once the court has determined at the
beginning of the case that the safety of another is in jeopardy, and that
the person needs the protection of a no-contact order, such findings are
not diminished, in any fashion, because the offender is ultimately found
not to have committed the underlying crime beyond a reasonable doubt. An
acquittal in a criminal case in no way means that the victim is no longer
at risk or that there was no probable cause that the defendant engaged in
harmful conduct to support safety concerns of the victim. Thus, in
addition to instructing the court to determine the duration of the no-
contact order at the conclusion of the underlying case, the statute merely
provides that if the defendant is in fact found guilty of a crime, then the
no-contact order must continue for five years even if the defendant would
be monitored on probation. It appears the legislature include the five-
year provision for two reasons: (1) to provide long-term protection for a
victim in those circumstances when the defendant’s conduct constituted a
crime, and (2) to make certain courts would not terminate a no-contact
order simply because the defendant would be supervised on probation. In
other words, the legislature wanted to make certain that probation could
not be used as a justification or basis to terminate a no-contact order
when the court performs its duty to “determine whether the no-contact order
should be modified or terminated” upon final disposition of the criminal
case. Iowa Code § 708.12(2).
 In the end, the inescapable conclusion is that our legislature
properly assumed under section 708.12 that a no-contact order entered by a
magistrate would not automatically terminate at the conclusion of an
underlying proceeding, and the legislature wanted the court to determine
the status or duration of the no-contact order at the final disposition of
the underlying case, subject only to a few mandated outcomes under certain
circumstances relating to a disposition of guilt.
 A criminal charge of harassment or stalking has two general outcomes.
It can result in a disposition of guilt or a disposition of acquittal.
Notwithstanding, the need to protect the victim does not necessarily
disappear with an acquittal. In fact, an acquittal may give rise to even a
greater urgency to protect the victim. Thus, under either outcome, the
need to protect the victim is present. Our legislature would not have
enacted a scheme, as found by the majority, to provide for continued
protection of the victim in one circumstance, but not the other. I would
hold that the district court properly continued the no-contact order
entered in this case following the acquittal.

-----------------------
 [1]It is not particularly unusual for our legislature to refrain from
specifically declaring the standard for the continuance or modification of
an injunction, as well as the issuance or dissolution of an injunction.
See, e.g., Iowa Code § 99.2 (setting forth procedure to enjoin operation of
a gambling or prostitution house as a nuisance, but not containing standard
upon which injunction will issue). In fact, our rules of practice
governing injunctions do not specify any standard of proof. See Iowa Rs.
Civ. P. 1.1501-11. Instead, we imply the preponderance-of-the-evidence
standard applicable to civil proceedings, unless otherwise specified. See
Kennedy, 251 Iowa at 421, 100 N.W.2d at 896; Fed. Land Bank v. Swanson, 438
N.W.2d 765, 767 (Neb. 1989) (party seeking injunction must establish claim
by a preponderance of the evidence).