# IN THE COURT OF APPEALS OF IOWA

No. 22-0686
Filed June 21, 2023

**IN RE THE MARRIAGE OF MARY C. FRAZIER
AND SHANNON L. FRAZIER**

**Upon the Petition of
MARY C. FRAZIER, n/k/a MARY C. STREICHER,**
     Petitioner-Appellant,

**And Concerning
SHANNON L. FRAZIER,**
     Respondent-Appellee.
_____

Appeal from the Iowa District Court for Clinton County, John Telleen, Judge.

A parent appeals the denial of an application for vaccination determination.

**REVERSED AND REMANDED.**

Jacob R. Koller and Ryan C. Shellady of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellant.

Richard A. Davidson of Lane & Waterman LLP, Davenport, for appellee.

Heard by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Mary Streicher, formerly known as Mary Frazier, appeals the district court's order dismissing her application for vaccination determination. Citing an impasse with her ex-husband, Mary requested the court decide whether their children should be vaccinated against COVID-19. The district court held it did not have jurisdiction to resolve a post-decree dispute between joint legal custodians absent a petition for modification. However, Iowa Code section 598.1(3) (2022) defines "joint legal custody" to mean that "neither parent has legal custodial rights superior to those of the other parent." To give effect to this statute, it is necessary for the court to break the occasional impasse between joint legal custodians and decide matters under the custodial umbrella.[1] When the parties' dissolution or other relevant decree does not address the issue, an application like Mary's is the appropriate vehicle to request the court's tie-breaking intervention. Accordingly, we reverse and remand with instructions that the district court hear Mary's application on the merits and make a determination consistent with the children's best interests.

Mary and Shannon Frazier divorced in 2014. At the time of their dissolution, the district court granted the parents joint legal custody of their two children. Mary was awarded physical care. The decree required the parents to attend mediation prior to initiating court proceedings should a conflict arise. Following an unsuccessful mediation, Mary filed an "Application for Vaccination Determination" on January 31, 2022. Shannon filed a resistance to the application, arguing that (1) Mary failed to properly invoke the district court's jurisdiction because she did not petition to modify the dissolution decree

---

[1] Under Iowa Code section 598.1(3), this would include "decisions affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction."

and (2) the court lacks tie-breaking authority. The district court agreed with Shannon and denied the application. Mary filed a timely appeal, which we review de novo. *See* Iowa R. App. P. 6.907 ("Review in equity cases shall be de novo.").

Our supreme court recognized the judiciary's tie-breaking authority in *Harder v. Anderson*, 764 N.W.2d 534, 538 (Iowa 2009): "When joint legal custodians have a genuine disagreement concerning a course of treatment affecting a child's medical care, the court must step in as an objective arbiter, and decide the dispute by considering what is in the best interest of the child." We have held this authority extends beyond medical care. *See, e.g.*, *In re Marriage of Bakk*, No. 12-1936, 2013 WL 5962991, at *2 (Iowa Ct. App. Nov. 6, 2013) ("Our supreme court has previously held the courts must step in as arbiter when joint custodians disagree on issues with the care of a child. We find educational decisions fall within this category." (internal citation omitted)).

Despite the apparent consensus as to the court's tie-breaking authority during the original dissolution or custody proceeding, and appeals therefrom, the case before us begs the question whether the court subsequently has such authority. Shannon argues that any later tie-breaking authority is limited to petitions for modification. But in modification actions, is the court truly serving in a tie-breaking capacity? For purposes of modification, the court's inquiry is different because it first must determine whether the circumstances "have so materially and substantially changed that the children's best interests make it expedient to make the requested change." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

Moreover, what is there to modify in cases like these? *See Hemesath v. Bricker*, No. 09-1064, 2010 WL 446990, at *4 (Iowa Ct. App Feb. 10, 2010) ("Although we accept

our role as a final arbiter in disputes between legal custodians, when the decree does not address the issue in dispute, a modification action is not the appropriate vehicle to address the issue."). The parties' decree does not address vaccinations. Mary does not request a change to the award of joint legal custody or ask that the parties' decision-making authority be unbundled—nor may she. *See In re Marriage of Makela*, 987 N.W.2d 467, 471 (Iowa Ct. App. 2022) (concluding "the statutory definition of 'joint legal custody' leaves no room for a parceling of rights").

Parents cannot possibly conceive of every possible disagreement they may encounter and settle it during the initial custody proceedings. Nor will every dispute arise from the requisite change in circumstances to warrant modification. In *Vogt v. Hermanson*, No. 17-0303, 2017 WL 2875697, at *2 (Iowa Ct. App. July 6, 2017), a panel of our court concluded a child should remain in the school district stipulated by the parents' decree because the party requesting modification failed to prove a material change in circumstances. What if the decree had not named a school district? Our courts still find it necessary to resolve such deadlocks. *See Hemesath*, 2010 WL 446990, at *4 (determining that although modifying the decree was inappropriate, it was necessary to consider the issue of school determination). Under these circumstances, the district court should consider the dispute an additional determination within the original dissolution proceedings. *See In re Marriage of Teepe*, 271 N.W.2d 740, 742 (Iowa 1978) (concluding the court properly considered the parties' custody dispute to be within their original dissolution proceeding because the wife was pregnant and unaware of it at the time of the dissolution); *In re Marriage of Smith*, 269 N.W.2d 406, 408 (Iowa 1978) (treating custody action as incident to original dissolution proceeding rather than a modification).

Further support for settling this dispute outside the realm of modification stems from the court's general equity powers described by Justice Carter's special concurrence in *In re Quirk*, 504 N.W.2d 879, 882 (Iowa 1993):

> The question that the present case really presents is how a legal challenge to such unilateral action is to be mounted. . . . On further reflection, I submit that the correct view should be that the authority of a court to referee disputes over the initial naming of a child, in which the parents cannot agree, is found among the court's general equity powers. While those powers may be properly exercised in a pending dissolution action to resolve a then current dispute over a child's original name, there is no reason why they may not also be exercised in an independent action brought for the single purpose of resolving an original naming dispute. . . . It is not necessary nor legally appropriate for this court to suggest that this issue be settled by filing a modification petition in the now final dissolution action. There is no provision concerning the child's name in the original decree to modify. Nor does the matter of a change of circumstances since the original decree (the *sine qua non* for success in a modification action) have anything to do with the issues of naming the child. This is an original issue that has not before been ruled on.

Similarly, our supreme court has recognized "that a court of equity has inherent power and jurisdiction in all proceedings involving the custody of minor children, and, that in exercising that power and jurisdiction i[t] acts in the capacity of parens patriae, as a department and agency of the State." *Helton v. Crawley*, 41 N.W.2d 60, 71 (Iowa 1950).

Shannon argues that permitting applications like Mary's will result in a flooding of joint custody disputes in the courts. He points out that disputes could range from choosing a religion to participation in extracurricular activities. However, this concern is more appropriately a matter of public policy to be taken up with the legislature. And in the event the relationship between joint legal custodians becomes too contentious, courts can and will determine when it is appropriate to modify the arrangement and award sole legal custody. *See In re Marriage of Rolek*, 555 N.W.2d 675, 677 (Iowa 1996) (concluding

parties' inability to cooperate warranted modification from joint to sole legal custody).

Furthermore,

> [m]ost litigants in dissolution proceedings do not want the court to micromanage their lives, nor does any judicial officer wish to invade such parental decision[-]making issues. Nevertheless, if the parents have reached impasse, the final arbiter is the court, not the physical caretaker. To conclude otherwise would result in the abdication of the other joint legal custodian's right to "equal participation" in such decisions.

*Gaswint v. Robinson*, No. 12-2149, 2013 WL 4504879, at *5 (Iowa Ct. App. Aug. 21, 2013).

Prohibiting applications like Mary's effectively gives greater authority to the road-blocking party in any custodial dispute. It further encourages contempt proceedings, which are of no assistance in the actual making of the decision and do not protect the parents' equal rights or the children's best interests. *See In re Marriage of Rigdon*, No. 19-1497, 2020 WL 7868234, at *2 (Iowa Ct. App. Dec. 16, 2020) (Ahlers, J., specially concurring) ("The quasi-criminal nature of contempt actions, with the corresponding burden of proof being beyond a reasonable doubt, may raise the bar too high to give meaningful protection to the joint custody rights of the parent who does not have physical care of the child."). The court's tie-breaking authority is necessary to fulfill the "equal participation" mandate set forth in Iowa Code section 598.1(3). Applications for determination of issues undecided by the original dissolution or custody proceeding are an appropriate and necessary vehicle to invoke the court's tie-breaking authority. Mary properly invoked this authority. Therefore, we reverse and remand with instructions that the district court hear Mary's application on the merits and make a determination consistent with the children's best interests.

**REVERSED AND REMANDED.**

Tabor, P.J., concurs; Schumacher, J., dissents.

**SCHUMACHER, Judge** (dissenting).

In oral argument, counsel for Mary framed this case as follows:

> From a fact specific perspective this case is about the COVID vaccine. But this isn't really a case about the COVID vaccine. It's much bigger than that. It's about whether the court has the ability to decide disputes between divorced parents as joint legal custodians when they have a dispute concerning a child's legal status, medical care, education, extra-curricular activities, or religious instruction.

I respectfully dissent from the majority opinion that holds that a modification petition is not required under these facts.

First, a determination must be made as to whether Mary properly invoked the district court's jurisdiction by filing what she captioned as an "Application for Vaccination Determination." On this record, I would conclude she failed to do so. District courts have original jurisdiction of the subject matter of Iowa Code chapter 598 (2022). *See* Iowa Code § 598.2. However, "[t]he issue here is not whether the district court lacked subject matter jurisdiction. Rather the issue is whether the court lacked authority to hear" the case. *See Christie v. Rolscreen Co.*, 448 N.W.2d 447, 450 (Iowa 1989). While often confused, the concepts have important distinctions. "Subject matter jurisdiction refers to 'the authority of the court to hear and determine cases of the general class to which the proceedings in question belong.'" *Id.* (citation omitted). In contrast, the authority of the court focuses on the ability of the court to decide a particular case. *Id.* That authority can be derived by following statutory procedures. *Id.* "A party who ignores one or more of the procedures does not invoke [the court's] authority." *Id.*

While the district court had subject matter jurisdiction of the claim, Mary failed to invoke the court's authority. "For all purposes, a civil action is commenced by filing a

petition with the court." Iowa R. Civ. P. 1.301(1) (emphasis added). Mary did not petition for modification, but filed an application for determination.[2]

While Mary cites a few examples of such applications being used, none of them involved an actual dispute concerning the validity of instituting a proceeding on the basis of an application for determination rather than a petition for modification. *See, e.g.*, *In re Marriage of Jacobs*, No. 16-2005, 2017 WL 5185435, at *1 (Iowa Ct. App. Nov. 8, 2017) (noting an application for determination was used to modify a child support obligation to a postsecondary education subsidy four years prior to the instant action); *In re Marriage of Bieber*, No. 10-1273, 2011 WL 1136273, at *1 (Iowa Ct. App. Mar. 30, 2011) (treating an "application for determination of school district" as a petition to modify physical care); *In re Marriage of Beal*, No. 05-0636, 2006 WL 1279054, at *1 (Iowa Ct. App. May 10, 2006) (observing the parents had instituted two applications for determination in prior proceedings). Based on the clear language of rule 1.301, Mary failed to properly invoke the district court's authority to decide the case.

The parents also disagree on whether they reserved the district court's authority in their dissolution decree. I would determine they did not. While frowned upon, "[i]n some circumstances, a district court can reserve jurisdiction to modify the custodial provisions of the decree in the absence of proof of a material and substantial change in circumstances." *In re Marriage of Hute*, No. 17-0046, 2017 WL 3283382, at *1–2 (Iowa

---

[2] Counsel for Mary argues that the filing of an application for the court to act as a tie-breaker is a common practice. Counsel for Shannon argues it is not common and not permitted by statute, and that the remedy is to modify the rights of the parents once legal custodial status has been established. The oral arguments highlight the lack of uniformity across the judicial districts on this issue, at least between these two neighboring districts, judicial districts six and seven.

Ct. App. Aug. 2, 2017). "To effectively reserve jurisdiction, the decree must explicitly provide the parties are relieved of the burden to show a material and substantial change in circumstance as a prerequisite to modification of the custodial provisions of the decree." *Id.* at *2. Such language is lacking in the parties' decree. Instead, the decree merely notes that the parties must engage in mediation prior to beginning legal proceedings. The decree thus did not reserve jurisdiction for the district court.

Finally, Mary claims that the district court's determination that the court lacked jurisdiction undermines case law that commands district courts to act as the final arbiter in certain matters when joint-legal custodians come to an impasse. *See, e.g.*, *Harder v. Anderson*, 764 N.W.2d 534, 538 (Iowa 2009). The majority has joined in this rationale. But Shannon asserted in oral arguments that the language in *Harder* is dicta, as that case involved a request for injunctive relief. Shannon highlights, by allowing parents to file these applications without a petition to modify custody, a district court is placed in a position to decide issues ordinarily left to joint custodians, such as which religion a child should be raised in, or whether a child will participate in sports.

Since *Harder*, this court has repeatedly noted district courts cannot unbundle custodial rights between the parents by allowing one joint-custodian more power over certain matters than the other. *See, e.g.*, *Armstrong v. Curtis*, No. 20-0632, 2021 WL 210965, at *3 (Iowa Ct. App. Jan. 21, 2021) (collecting cases and noting that "joint custody and sole custody [are] all-or-nothing propositions"); *see also In re Marriage of Comstock*, No. 20-1205, 2021 WL 1016601, at *2 (Iowa Ct. App. Mar. 17, 2021) (reversing a temporary order following the filing of a petition for modification that gave the parent with physical care "tie-breaking" authority).

And our supreme court recently endorsed the determination that custodial rights cannot be unbundled, upholding a decision on custody by this court that reversed a provision in a dissolution decree because it granted one joint-custodian final decision-making authority over the rights of the other joint-custodian. *See In re Marriage of Sokol*, 985 N.W.2d 177, 182 (Iowa 2023) (affirming as to the court of appeals's decision on joint custody, but reversing as to the court's alimony determination). While not framed as a request to unbundle, Mary is asking the court to override Shannon's opposition to the COVID vaccine. In the original decree, the parties were granted joint legal custody, which would include medical decisions. While the majority opinion asserts vaccinations were not addressed in the decree, joint legal custody concerning medical decisions would appear to cover this issue.

Shannon asserts that by making a ruling on the merits, the court would effectively be depriving one parent joint-decision-making authority on the matter. Even putting that issue aside, the district court's authority must still be properly invoked. As the district court noted,

> All the cases cited [by Mary] involved situations where the court was forced to step in to decide a dispute concerning things such as schooling or medical care in situations where the parties were properly before the court on either a trial of the initial dissolution action or through an application for modification of the decree. We have neither here.

Mary did not seek to modify the legal custodial status. And she does not allege a material and substantial change since the entry of the decree in her application. Mary's application can be read as a request to unbundle a medical decision from the joint legal custodial status. And to the extent Mary did not petition for modification, her application

for determination failed to invoke the district court's authority. Accordingly, I would affirm the district court dismissal.