# IN THE SUPREME COURT OF IOWA

No. 08–0475

Filed April 17, 2009

**SUSAN HARDER,**

Appellant,

vs.

**ANDERSON, ARNOLD, DICKEY, JENSEN,
GULLICKSON and SANGER, L.L.P.** and
**JANE PINI,**

Appellees.

---

Appeal from the Iowa District Court for Johnson County, Kristin L. Hibbs, Judge.

A noncustodial parent appeals a district court ruling prohibiting her from obtaining the mental health records of her children. **AFFIRMED**.

David Burbidge of Johnston & Nathanson, PLC, Iowa City, for appellant.

Steven E. Ballard and Thomas E. Maxwell of the Leff Law Firm, L.L.P., Iowa City, for appellees.

**WIGGINS, Justice.**

A noncustodial parent, with joint legal custody of the children, seeks to obtain the mental health records of her children. The district court denied the parent's request to require the mental health provider to release the records. We hold when a noncustodial parent makes a request and the provider raises an objection to the release of information, a court must apply the best-interest-of-the-child test in deciding whether to release a child's mental health record. Because in this case it would not be in the best interest of the children to release the records, we affirm the judgment of the district court.

## I. Background Facts and Proceedings.

Susan Harder and Kirk Harder are the parents of three children. In June 2003, the court dissolved their marriage, granted them joint legal custody of their three minor children, and awarded Susan primary physical care. In August 2005, the court modified the decree and granted Kirk primary physical care.

Around this time, a criminal action was filed against Susan charging her with assault causing injury to her middle daughter. At the time of the incident, her daughter was eleven years old. Susan pled guilty to the charge and the district court sentenced her to ninety days in jail, which the court suspended while she served a two-year probationary period.

In conjunction with the criminal charges, the court issued a no-contact order, prohibiting Susan from having contact with her middle daughter. At the request of the State and Kirk, the court later extended the no-contact order. The no-contact order is in effect until September 22, 2012.

The dispute in this appeal is between Susan and Jane Pini over the release of the medical records of Susan's children. Pini is a licensed social worker. Pini specializes in counseling and play therapy for children and adults. She is employed by Anderson, Arnold, Dickey, Jensen, Gullickson and Sanger, L.L.P. in Iowa City.

In December 2002, Susan initiated contact with Pini to obtain counseling for the children to help them cope with their parents' divorce. Pini started seeing all of the Harder children in January 2003. Susan signed the initial consent to treatment. In the five years since the initial consultation, Pini provided therapy for the Harder children on a consistent basis. In 2005, Pini testified at the Harders' custody modification hearing, but did not produce any of the children's therapy records at the hearing. Pini still provided counseling services to the children at the time of the lower court proceeding. Pini continues to maintain a good relationship with the children.

On October 19, 2007, Susan requested, through her attorney, that Pini provide copies of all of the records concerning the counseling services Pini provided to the Harder children. The request for the records contained a properly signed and executed authorization as required by law to release the information for each of the children.

On November 5 Pini responded by letter to the request stating she would not release the records. In the letter, she said because her records are in a format that needs to be interpreted to be fully understood, it is her policy not to provide her office records. She also emphasized that the two older children have a reasonable expectation that Pini will keep their mental health records confidential, and that her professional ethics code dictated that she release only the amount of relevant information necessary to respond to a situation. Pini closed the letter by extending

an offer to obtain a release and speak directly with Susan's therapist or, in the alternative, meet directly with Susan. Susan declined both offers.

Unsatisfied with Pini's refusal to release the records, Susan filed an application for a mandatory injunction requesting the court to order Pini and her employer to release all records pertaining to the services they provided Susan's children. The district court denied Susan's request for a mandatory injunction.

Susan appeals.

## II. Issues.

The issue we must decide is whether a divorced parent with legal custody can obtain her children's mental health records by presenting a waiver to the mental health provider when disclosure of the records is not in the best interest of the children.

## III. Scope of Review.

This case involves the appeal of a district court's denial of an application for a mandatory injunction. A petition for injunctive relief traditionally invokes the court's equitable jurisdiction, and our review is de novo. *E. Oaks Dev., Inc. v. Iowa Dep't of Transp.*, 603 N.W.2d 566, 567 (Iowa 1999). " 'While weight will be given to findings of the trial court, this court will not abdicate its function as triers de novo on appeal.' " *Nichols v. City of Evansdale*, 687 N.W.2d 562, 566 (Iowa 2004) (quoting *Hansen v. Chapin*, 232 N.W.2d 506, 509 (Iowa 1975)).

## IV. Applicable Statutes.

In her petition for injunctive relief, Susan claimed sections 598.41(1)(*e*), 228.3(1), and 154C.5(3) of the Iowa Code require Pini to release the medical records regarding her children. Section 154C.5(3) states:

> A licensee or a person working under supervision of a licensee shall not disclose or be compelled to disclose information acquired from persons consulting that person in a professional capacity except:
>
> . . . .
>
> 3. With the written consent of the client, or in the case of death or disability with the consent of the client's personal representative, another person authorized to sue, or the beneficiary of an insurance policy on the client's life, health, or physical condition.

Iowa Code § 154C.5(3) (2007). As a licensed social worker, Pini is subject to section 154C.5(3). *Id.* § 154C.1(2).

Section 228.3(1) contains the following language:

> An individual eighteen years of age or older or an individual's legal representative may consent to the disclosure of mental health information relating to the individual by a mental health professional, data collector, or employee or agent of a mental health professional, of a data collector, or of or for a mental health facility, by signing a voluntary written authorization.

*Id.* § 228.3. Susan and Pini concede that Pini is a mental health professional subject to section 228.3.

Section 598.41(1)(*e*), provides "[u]nless otherwise ordered by the court in the custody decree, both parents shall have legal access to information concerning the child, including but not limited to medical, educational and law enforcement records." *Id.* § 598.41(1)(*e*).

**V.  Analysis.**

In Iowa there is no common law physician-patient privilege. *State v. Cole*, 295 N.W.2d 29, 32 (Iowa 1980). The privilege is strictly statutory. *Id.* Section 622.10 of the Code is the statutory rule for the testimonial aspect of the privilege in a litigation setting. *Chung v. Legacy Corp.*, 548 N.W.2d 147, 149 (Iowa 1996). By rule, we have extended section 622.10 to apply to the discovery of privileged information. *Id.*

In nonlitigation settings, Iowa Code sections 154C.5 and 228.2 provide that a mental health care provider, such as Pini, cannot disclose a patient's mental health records unless specifically authorized by the Code. Iowa Code § 154C.5 (labeling "information acquired from persons consulting" a social worker as confidential); *id.* § 228.2 (prohibiting disclosure of mental health information). "Mental health information" in chapter 228 is defined as "oral, written, or recorded information which indicates the identity of an individual receiving professional services and which relates to the diagnosis, course, or treatment of the individual's mental or emotional condition." *Id.* § 228.1(5). The legislature did not exclude minors from the physician-patient privileges established under sections 154C.5 and 228.2. Accordingly, Pini cannot disclose the children's mental health records unless authorized to do so by law.

Susan argues the Code authorizes a parent, as a legal representative of the child, to consent to the release of the child's mental health records. *Id.* §§ 154C.5(3), 228.3(1). We agree with her that sections 154C.5(3) and 228.3(1) normally allow a parent to consent to the release of his or her child's mental health records.

Susan then argues section 598.41(1)(*e*) gives her an absolute right to obtain her children's records. Susan may even find some support for her position in one of our court of appeals' decisions. *See Leaf v. Iowa Methodist Med. Ctr.*, 460 N.W.2d 892, 894 (Iowa Ct. App. 1990) (holding a noncustodial parent has a right to access his child's medical records because section 598.41(1) merely codified existing common law). We disagree.

Susan fails to appreciate that although section 598.41(1)(*e*) guarantees both parents "legal access" to a child's medical records, section 598.41(1)(*e*) does not give either parent an absolute right to those

records. Under chapter 598, the best interests of the child always prevail. *See In re Marriage of Bingman*, 209 N.W.2d 68, 71 (Iowa 1973) (stating "[t]he entire tenor of [chapter 598] is to provide the court with any information which might be helpful in determining the child's best interest"). For example, a divorced parent with legal custody does not have the absolute right to direct a child's medical care. *See* Iowa Code § 598.1(3) (providing the parents with "joint legal custody" have the right to equally participate in decisions affecting a child's medical care). When joint legal custodians have a genuine disagreement concerning a course of treatment affecting a child's medical care, the court must step in as an objective arbiter, and decide the dispute by considering what is in the best interest of the child. *Pascale v. Pascale*, 660 A.2d 485, 494 (N.J. 1995). Similarly, the rights given to parents under section 598.41(1)(*e*) are tempered by the overriding principle that when dealing with a matter concerning a child whose custody was determined by a court decree in a dissolution-of-marriage action, the first and governing consideration a court must apply is the best interest of the child.

Applying this reasoning to the situation where a parent requests his or her child's mental health records, when a mental health provider claims the release of such information is not in the child's best interest, the court must determine whether the records should be released applying the best-interest-of-the-child test. To the extent our decision in this case is inconsistent with *Leaf*, that case is overruled.

On our de novo review of the record, we agree with the district court's finding that the release of the records as requested by Susan was not in the best interest of the children. To Susan's credit, she knew the dissolution would place a strain on the children, so she sought the services of Pini as early as December 2002 to counsel the children. Pini

has been involved in managing the children's mental health since January 2003. Pini has developed a good therapeutic relationship with the children over the course of her treatment. The children have indicated to Pini that they do not want their records released to their mother. Pini was aware of the circumstances of Susan's assault of one of the children, which led to the court issuing the no-contact order. Based on Pini's knowledge, experience, background, and her treatment of the children, Pini opined the release of the records was not in the children's best interest, that it could have the potential for increased physical and emotional abuse of the children, and that it could cause irreparable harm to the children's future relationship with Susan. We agree with Pini's assessment.

Moreover, Susan claims she is seeking the records for use in her own therapy, in order to get a larger picture of her children's feelings towards her, and repair her strained relationship with her daughter. To help Susan achieve this goal, without compromising the mental health of the children, Pini offered to meet with Susan to answer her questions or listen to her concerns dealing with the children. Pini also agreed to work with Susan's therapist to coordinate Susan's therapy. Instead of exploring these options with Pini, Susan filed her action demanding the release of her children's records. Susan's actions lead us to believe that her request for the records is in her own best interest rather than that of her children.

Accordingly, we agree with the district court's finding, that under the circumstances of this case, the release of the children's records is not in the best interest of the children.

**VI. Disposition.**

We affirm the decision of the district court refusing to require Pini to release the children's mental health records to Susan because the release of the records is not in the best interests of the children.

**AFFIRMED.**

All justices concur except Baker, J., who takes no part.