# IN THE COURT OF APPEALS OF IOWA

No. 20-1535
Filed June 16, 2021

IN RE THE MARRIAGE OF MIKAELA RENE FLICK
AND JASON THOMAS FLICK

Upon the Petition of
**MIKAELA RENE FLICK, n/k/a MIKAELA RENE COLGLAZIER,**
        Petitioner-Appellee,

**And Concerning**
**JASON THOMAS FLICK,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Harrison County, Jeffrey L. Larson,

Judge.


        Jason Flick appeals the district court order granting his former spouse

Mikaela Flick's petition to modify the terms of their marriage dissolution decree and

denying his own. **AFFIRMED IN PART, AFFIRMED AS MODIFIED IN PART,**

**REVERSED IN PART, AND REMANDED.**


        Stephen Babe of Cordell Law, LLP, Des Moines, for appellant.

        Krisanne C. Weimer of Weimer Law, P.C., Council Bluffs, for appellee.


        Considered by Vaitheswaran, P.J., Ahlers, J., and Vogel, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2021).

**AHLERS, Judge.**

In this dissolution-of-marriage modification action, the parents ask us to resolve a number of issues that have arisen as they try to navigate the waters of a joint-physical-care arrangement with their child. The waters are made more turbulent by the distance between the parties. Due to the terms of the parties' initial stipulation, coupled with the limitations imposed by the parties' pleadings and the evidence, we are unable to chart the parties' entire course, but, like the district court, we will do our best.

The parties divorced in February 2018. They have one child together, who was born in 2016. In relevant part, the decree dissolving the marriage awarded the parties joint legal custody and joint physical care of the child and established a parenting-time schedule. The decree further specified that the child would attend one of two daycares proposed by the father in Omaha, Nebraska, and granted both parties a right of first refusal to have the child when the other party cannot care for the child during the other parent's scheduled time.

The mother filed a petition for modification in February 2020. She requested changes to the parenting-time schedule, daycare provisions, and right-of-first-refusal provisions, but she sought to maintain the joint-physical-care arrangement. Additionally, she requested the court make a determination of what school the child will attend, as she and the father, as joint legal custodians, had reached an impasse on that issue. In his answer to the petition, the husband counterclaimed, seeking to replace the joint-physical-care provisions with provisions awarding him physical care and requiring the mother to pay child support.

The case went to trial in August 2020. The district court concluded a material change in circumstances had occurred that warranted changing the parenting-time schedule, but not one that justified modifying physical care. Based on this conclusion, the court changed the parenting-time schedule from one that involved multiple exchanges per week to a schedule pursuant to which each party would have the child for alternating seven-day periods (i.e., a week-on, week-off schedule).

The court further concluded that it was not in a position to determine which school and which daycare the child should attend. Instead, the court concluded the mother should determine which school the child should attend and each party should choose the daycare the child attends while the child is in that parent's care. Finally, the court removed the right-of-first-refusal provision and terminated the father's child support obligation.

The father appeals. While the mother did not cross-appeal, she does seek appellate attorney fees, as does the father.

**I.    Standard of Review**

Actions seeking to modify the physical care provisions of a dissolution of marriage decree lie in equity, so we review the district court's decision de novo. *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016). Although we give weight to the district court's factual findings in dissolution of marriage modification proceedings, we are not bound by them. *In re Marriage of Mihm*, 842 N.W.2d 378, 381 (Iowa 2014). Even though our review of a modification action is de novo, there is deference to the district court in that we will affirm the district court unless the district court failed to do substantial equity. *See Ryan v. Wright*, No. 17-1375, 2018

WL 2246882, at *2 (Iowa Ct. App. May 16, 2018) (citing *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016)).  The child's best interest is the "controlling consideration."  *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).

## II.  Discussion

We will address each of the issues raised by the father, starting with his counterclaim seeking physical care of the child in place of the joint-physical-care arrangement.

### A.  Counterclaim Seeking Physical Care

When a parent with shared physical care seeks to modify the decree to place the child in that parent's physical care, we apply well-established principles:

> Courts can modify the custody and care provisions of a dissolution decree only when there has been "a substantial change in circumstances since the time of the decree, not contemplated by the court when the decree was entered, which was more or less permanent, and relates to the welfare of the child."  *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002).  The parent seeking to change the physical care provision has a heavy burden and must show the ability to offer superior care.  *Id.*  Where there is an existing order for joint physical care, both parents have been found to be suitable primary care parents.  *Id.* at 369.  If it is determined the joint physical care agreement needs to be modified, the physical care provider should be the parent "who can administer most effectively to the long-term best interests of the children and place them in an environment that will foster healthy physical and emotional lives."  *In re Marriage of Walton*, 577 N.W.2d 869, 871 (Iowa Ct. App. 1998).

*In re Marriage of Berns*, No. 13-0013, 2013 WL 4009678, at *2 (Iowa Ct. App. Aug. 7, 2013)*.*

The father makes a number of allegations that he asserts constitute a change in circumstances warranting his requested change in the physical-care provisions.  However, he does not explain persuasively how his allegations show a material change in circumstance warranting a change of physical care, nor has

he demonstrated the superior ability to parent necessary to place physical care of the child with him.

## 1.    Substantial Change in Circumstances

Starting with the claimed change of circumstances, two apparent changes in circumstances that have occurred since the entry of the decree are the father's move from Papillion, Nebraska, to the Millard neighborhood of Omaha, Nebraska, and his change of jobs from working at a car dealership to working as a self-employed mortgage loan officer.  However, neither of these changes warrant modifying the physical care provision of the dissolution decree.  If anything, both changes make the current custody arrangement more convenient for the parties and the child, as the move to Omaha moved the father closer to the mother, making the process of exchanging the child more convenient, and the father's new position gives him a more flexible work schedule.

The father asserts a change of circumstances based on the exercise of the right-of-first-refusal provision in the original decree.  Due to the exercise of that right offered by the mother and accepted by the father, the father, by his calculation, has had the child 55.29% of the time since the original decree was entered.  Even if we accepted the father's figure, a 55/45 split of time still constitutes shared physical care in this case where both parents provide a home and are involved in providing day-to-day care of the child.  *See In re Marriage of Brown*, 778 N.W.2d 47, 51 (Iowa Ct. App. 2009) (holding exactly equal time is not required, as "joint physical care 'does not require that the residential arrangements be determined with mathematical precision'" (quoting *In re Seay*, 746 N.W.2d 833, 836 (Iowa 2008))).  Furthermore, the fact the parties were granted a right of first

refusal anticipated the right would be exercised, so the fact it was exercised to a reasonable extent was within the contemplation of the parties and the court when the original decree was entered and does not constitute a change of circumstances justifying the father's requested modification.

The father also suggests that a breakdown of communication between the parents and the mother's disparaging remarks to the father constitute changes in circumstances warranting his requested modification. Of course, discord between the parents can have a disruptive effect on a child's life and can form a basis for abandoning a joint-physical-care arrangement in favor of physical care being placed with only one of the parents. *See, e.g., Harris*, 877 N.W.2d at 441. However, as a preliminary observation, we reject the father's implication that disparaging comments and discord was a one-way street flowing from the mother, as the record shows the father to be a perpetrator of such undesirable conduct to an even greater degree than that of the mother. While both parents could substantially improve the situation and their child's life by avoiding such conduct, we note the parents have been able to effectively co-parent in spite of this conduct. We do not find the discord rises to the level to require the jettison of joint physical care.

In short, the father has not met his burden to show a substantial change in circumstances that would warrant modification of the decree to place physical care of the child with him rather than continuing the joint-physical-care arrangement.

### 2. Providing Superior Care

Even if we assumed there was a material change warranting a change in the physical-care arrangement, the father has not met his "heavy burden" to show

he is better able to provide for the child. The father attempts to meet his burden by making primarily four claims: (1) the mother "relied heavily on daycare" when the child was in her care; (2) he had the child roughly fifty-five percent of the time since the original decree was entered; (3) the mother did not research the differences between school districts to the extent that he had; and (4) the mother has an alcohol-abuse problem.

As to the first two claims, we note that the mother placing the child in daycare while she is at work and the father having the child slightly more than half the time since the dissolution do not indicate that he is the superior parent. As previously noted, the extra days the father had the child were the result of him exercising his right of first refusal during times when the mother could not care for the child during her scheduled time. The record indicates these days occurred irregularly, with the father having the child up to seven extra days some months and no extra days other months. At most, this indicates the mother has a more restrictive schedule than the father, not that the father is the better parent. As for the daycare argument, we agree with the district court and similarly do not believe the mother's placement of the child in daycare more frequently than the father indicates the father is the superior parent. When the mother is not working from home due to the COVID-19 pandemic, the mother's job requires her to be away from home and unable to take care of the child during the day. We do not believe the fact she works during the typical workday reflects negatively on her ability to parent.

As for the school-related argument, we do not fault the father for researching different schools and presenting evidence of details about the schools

he found important. However, those efforts do not persuade us he is the superior parent. The mother took the initiative to look into starting schooling for the child, which the father initially resisted because the time was not "ripe." We find both parents have taken an appropriate interest in procuring educational opportunities for the child.

As for the father's claims about the mother's alcohol abuse, we conclude this claim is largely unsubstantiated. The father suggests he is the superior parent because the mother "was less than forthright about her OWI (and drinking habits)." He further points to testimony from the mother's mother that the mother's parents are "moderate drinkers." We are not persuaded by this evidence. The father does not link the evidence of the mother's parents' drinking habits to the mother's parenting, nor does he explain how the mother's parents being "moderate drinkers" indicates, as he suggests, that the mother irresponsibly leaves the child in her parents' care.

### 3.      Conclusion Regarding Counterclaim

Ultimately, we agree with the district court and conclude the father has not met his burden either to show a substantial change in circumstance has occurred or that he is the superior parent. The district court did not fail to do equity by refusing to modify the physical-care provision of the dissolution decree. Therefore, we affirm the district court's denial of the father's counterclaim seeking physical care of the child.

### B.      Parenting-time schedule

The father next argues the mother did not meet her burden of showing a change of circumstances so as to justify changing the parenting-time schedule

established in the original decree. The hurdle the petitioning party must clear to be able to modify the parenting-time schedule in a joint-physical-care arrangement is the same as that of a petitioning party seeking to modify visitation. *See Brown*, 778 N.W.2d at 52–53. That hurdle is lower than the one that must be cleared in order to change physical care, as "[a] different, less demanding burden applies when a parent is seeking to change a visitation provision in a dissolution decree." *See id.* at 51. To clear that hurdle, the mother must show "that there has been a material change in circumstances since the decree and that the requested change in [parenting time] is in the best interests of the child[ ]." *Id.* at 51–52 (quoting *In re Marriage of Salmon*, 519 N.W.2d 94, 95–96 (Iowa Ct. App. 1994)). In general, a "much less extensive change in circumstances" must be shown to modify a parenting-time schedule than the change in circumstances required to change physical care. *Id.* at 51 (quoting *Salmon*, 519 N.W.2d at 96). We find the mother has cleared the comparatively low hurdle to allow modification of the parenting-time schedule.

The original parenting-time schedule placed the child with the father from Sunday morning until Monday morning and then from Tuesday night until Thursday morning, with the mother having the child the rest of the week. The evidence convinces us this schedule, which involves multiple exchanges per week, was implemented to accommodate the father's work schedule at the time of the entry of the original decree. Since entry of the original decree, however, the father has changed jobs and now has much greater flexibility in his work schedule. As a result of that flexibility, multiple exchanges are no longer needed to enable the father to spend time with the child. This change in the father's work flexibility is a

material and substantial change that was not contemplated by the parties or the court at the time the original decree was entered and is sufficient in itself to justify changing the parenting-time schedule. However, there is more. The record shows the parents generally have difficulty communicating politely and cooperatively. The tone of the text messages between the two is often strained and combative, and both parents call the other names. The district court's modification to a week-to-week parenting-time schedule reduces the number of required exchanges and thus reduces the parents' need to have contact with one another. The modified schedule also gives the father more time with the child and is more stable for the child by keeping him with the same parent for a week at a time. For these reasons, we agree with the district court and determine modifying the parenting-time schedule to a week-on, week-off format is in the child's best interest.

### C.    Right of First Refusal

The district court removed the right of first refusal for both parties. At the district court, the mother argued the father interpreted the right-of-first-refusal provision too literally and required the mother to notify him even when sending the child to stay with a relative or at a sleep-over with friends. She requested that the provision be modified to make clear she need not offer to give the child to the father on such occasions.

We agree that modifying the right of first refusal in this case is appropriate for the reasons previously discussed regarding the parties' strained communication, and the mother's request to be able to allow the child to have sleep-overs with friends or relatives is reasonable. However, we disagree with the district court's decision to strike the right of first refusal entirely, in part because the

mother did not request total rescission of the provision. Instead, we reinstate the right of first refusal, but modify its provisions in an effort to eliminate the concerns noted. Accordingly, the right-of-first-refusal provision in the original decree is hereby stricken. It is replaced with the following:

> In the event the parent exercising parenting time with the child intends to place the child in the care of a third party for a period in excess of twenty-four (24) hours, that parent shall notify the other parent and offer the other parent the option to care for the child. If the other parent accepts the offer, then the child shall be cared for by the other parent rather than placed in the care of the third party. If the other parent declines the offer, then the offering parent is free to place the child in the care of the third party.

**D.     School Choice**

Next we consider the father's arguments related to the district court's school-choice ruling. The district concluded that it could not decide which school district the child should attend and instead decided to resolve the parties' impasse on that decision by giving the mother the authority to decide which school the child attends. While we recognize the difficulty in making such a decision, the district court was required to make it, rather than delegating that authority and responsibility to one of the parties.

The parents have joint legal custody of the child. As joint legal custodians, neither parent has legal custody rights superior to the other parent and each parent has the right and responsibility to equally participate in decisions affecting the child's "legal status, medical care, education, extracurricular activities, and religious instruction." Iowa Code § 598.1(3) (2020). When, as here, the joint legal custodians of a child have a genuine disagreement over one of the five areas affecting the child listed in section 598.1(3), the court "must step in as an objective

arbiter, and decide the dispute by considering what is in the best interest of the child." *See Harder v. Anderson, Arnold, Dickey, Jensen, Gullickson & Sanger, L.L.P.*, 764 N.W.2d 534, 538 (Iowa 2009) (addressing a parent's access to a child's medical records); *see also In re Marriage of Comstock*, No. 20-1205, 2021 WL 1016601, at *2 (Iowa Ct. App. Mar. 17, 2021) (reversing the district court for delegating decision-making authority as to which school the child should attend to a parent and remanding for the district court to make the determination for the parties); *In re Marriage of Laird*, No. 11-1434, 2012 WL 1449625, at *2–3 (Iowa Ct. App. Apr. 25, 2012) (affirming the procedure of having the district court resolve the conflict between joint custodial parents as to which school the child should attend). By not resolving the dispute between the parties and choosing to delegate the responsibility for making the school decision to one of the parties, the district court neglected to fulfil its role as "objective arbiter," and remand is necessary to allow the district court to make a determination. *See Harder*, 764 N.W.2d at 538. In making that determination on remand, we caution that the overarching consideration is the best interest of the child, which does not necessarily hinge on perceived comparable merits of the schools at issue. *See Hoffman*, 867 N.W.2d at 35–36 (highlighting the limitations inherent in comparing school data and noting the difference, if any, between the quality of two schools may not be material in making decisions concerning a child's best interests in a physical-care modification action).

### E.    Daycare Choice

As for the daycare decision, the district court concluded each parent should decide which daycare the child will attend when the child is in that parent's care

and each parent must inform the other parent of which daycare the parent is utilizing for the child. We agree that this is the most equitable result and is in the child's best interest, and we therefore affirm the district court on this issue.

### F. Appellate Attorney Fees

Finally, both parties request appellate attorney fees and have submitted fee affidavits in support of their claims. Appellate attorney fees in a dissolution of marriage modification proceeding "are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). The factors we consider include "the needs of the party seeking the award, the ability of the other party to pay, and relative merits of the appeal." *Id.* Having considered those factors, including the mixed results for both parties, we decline to award appellate attorney fees to either party. Each party shall be responsible for that party's own attorney fees, but shall not be obligated to pay any amount of the other party's appellate attorney fees.

## III. Conclusion

We affirm the denial of the father's counterclaim seeking physical care of the child and thus leave the joint-physical-care arrangement intact. We also affirm the district court's modification of the parenting-time schedule to provide for alternating one-week periods with the child and the decision to permit each parent to choose the daycare provider for the child when the child is in that parent's care.

We affirm the district court's decision to change the right-of-first-refusal provisions of the original decree, but disagree with the decision to eliminate the right of first refusal altogether. Instead, we modify the provision as provided in this opinion.

We reverse the district court's decision to delegate school-choosing authority to the mother and remand to the district court to make that decision for the parties.

Costs are assessed eighty percent to the father and twenty percent to the mother.

**AFFIRMED IN PART, AFFIRMED AS MODIFIED IN PART, REVERSED IN PART, AND REMANDED.**