# IN THE COURT OF APPEALS OF IOWA

No. 21-1918
Filed August 17, 2022

**IN RE THE MARRIAGE OF RACHAEL KAY SOKOL
AND DAVID LANGDON SOKOL**

**Upon the Petition of
RACHAEL KAY SOKOL,**
        Petitioner-Appellee,

**And Concerning
DAVID LANGDON SOKOL,**
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.

A former spouse appeals a decree of dissolution of marriage, arguing the district court erred in awarding his ex-wife tie-breaking authority on decisions regarding the parties' children. He also claims the court erred in the property distribution, the amount and duration of his spousal support award, and in failing to award trial attorney fees. **AFFIRMED AS MODIFIED AND REMANDED.**

Kate Simon of Cordell Law, LLP, Des Moines, for appellant.

Stacey N. Warren of Cashatt Warren Family Law, P.C., Des Moines, for appellee.

Considered by Bower, C.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

David Sokol appeals the decree dissolving his marriage to Rachael Sokol. He contends the court erred in providing Rachael tie-breaking authority within an award of joint legal custody. He also claims the court erred in its property distribution, the amount and duration of his spousal support award, and in declining to award David trial attorney fees. On appeal, both parties request appellate attorney fees.

We determine the district court improperly awarded Rachael tie-breaking authority within a joint legal custody arrangement and the amount and duration of spousal support is inequitable. We affirm the court's property distribution and the court's declination to award David trial attorney fees. We remand for an award of appellate attorney fees for David.

I.      **Background Facts & Proceedings**

Rachael and David married in 2002. At the time of the marriage, Rachael was in medical school. When Rachael graduated in 2005, the parties moved to Michigan for Rachael's four-year residency. The couple returned to Iowa in 2009 and remained in the Des Moines area for the rest of their marriage.

Rachael, age forty-five, works as an emergency room physician and earns about $440,000 annually. She worked a second position for a few years as a medical director at a facility in Fort Dodge, which raised her overall income to about $500,000 a year. She gave up the medical director position in 2020 to spend more time with her children. When the parties resided in Michigan, David, age forty-three, worked as a furniture salesperson, earning about $70,000 a year. Since the return to Iowa, he has worked as the owner-operator of Home Doctor LLC, which

does home renovations. He has invested personal funds in the business and has not drawn income from the business since its inception. He has elected instead to reinvest any profits back into the business. David testified that his business has seen a downturn since the Covid-19 pandemic but is hopeful for an increase. The district court imputed David an income of $50,000.

Pinnacle Harbor Investments, a separate LLC formed during the marriage, owns real property in Woodward, Iowa. This property houses the showroom and backroom for Home Doctor LLC. The Woodward property also contains an apartment that is rented. The building and personal property inside the building was damaged by the 2020 derecho. David received insurance proceeds. David testified that he repaired some of the damage on his own, but has waited to repair the rest of the building until the finalization of the parties' dissolution. At the time of trial, David held insurance proceeds of $218,213 in a checking account.

Rachael and David have two children, Ka.S., born in 2006 and Ko.S., born in 2014. The family hired a nanny or used daycare for the children because of the parties' employment. Rachael testified that she is the parent that manages the children's appointments and monitors their school work. The parties' inability to communicate, particularly about the children, was a major point of contention at trial.

The parties separated in July 2019. After separation, Rachael retained the marital home and David moved to an apartment. Rachael testified that they had divided the personal property by trial, although David disputes that representation. Rachael and David shared temporary joint legal custody and temporary joint

physical care of the children. Rachael was ordered to pay David temporary support of $5000 a month.

Trial was held over a three-day period in June 2021, with the only witnesses being the parties, Rachael and David. By agreement of the parties, an affidavit from Kevin Crowley on the value of the Woodward property was submitted in lieu of live testimony.

Following trial, the court granted Rachael and David joint legal custody and joint physical care, but gave Rachael the ultimate authority to make decisions regarding the children. The court awarded David spousal support of $3000 a month for forty-eight months. The court, with a few minor differences, adopted Rachael's proposed property distribution set forth in Rachael's exhibit 35, resulting in each party receiving net assets of over $664,000.[1] David filed a motion for the district court to reconsider, enlarge, or amend. Except for the correction of a scrivener's error, the court denied David's motion.[2] David appeals.

## II. Standard of Review

"Marriage dissolution proceedings are equitable proceedings. Thus, the standard of review is de novo. Although we give weight to the factual findings of the district court, we are not bound by them." *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016) (internal citations omitted). "[W]e will disturb a district court determination only when there has been a failure to do equity." *Id.*

---

[1] At the end of the trial, the court requested proposed findings of fact, conclusions of law, and orders. These proposed orders do not appear in our record.
[2] The ruling on the parties' post-trial motions increased the equalization payment to David to $123,924.50, to be paid through the entry of a Qualified Domestic Relations Order.

"We review a challenge to a district court's grant of attorney fees for an abuse of discretion." *NevadaCare, Inc. v. Dep't of Hum. Serv.*, 783 N.W.2d 459, 469 (Iowa 2010). "We will reverse a court's discretionary ruling only when the court rests its rulings on grounds that are clearly unreasonable or untenable." *Id.*

## III. Discussion

David raises several issues on appeal. First, he contends the district court should not have provided Rachael tie-breaking authority when the parties were awarded joint legal custody. David also raises several points of error in the court's property division. He also claims the district court awarded an inadequate amount and duration of spousal support. Finally, David argues the court abused its discretion when the court declined to award him attorney fees. Both parties request appellate attorney fees.

### A. Final Decision-Making Authority

David claims the district court wrongly granted Rachael tie-breaking authority in a joint custody arrangement. The district court granted the parties joint legal custody and joint physical care. However, the court also provided a blueprint for decision-making that requires Rachael to "consider David's input and decide on a course of action." If David does not provide input, "Rachael may unilaterally decide on the course of action." Rachael needs to consult David, but she has the final decision-making authority regarding the children.

Such a grant of authority is not contemplated by Iowa Code chapter 598 (2019). Instead, that chapter "appears to consider joint custody and sole custody as all-or-nothing propositions." *Armstrong v. Curtis*, No. 20-0632, 2021 WL 210965, at *3 (Iowa Ct. App. Jan. 21, 2021). Chapter 598 defines joint custody as:

> [A]n award of legal custody of a minor child to both parents jointly under which both parents have legal custodial rights and responsibilities toward the child and under which *neither parent has legal custodial rights superior to those of the other parent*. Rights and responsibilities of joint legal custody include but are not limited to *equal participation in decisions* affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction.

Iowa Code § 598.1(3) (emphasis added).

The legislature has instructed that, "If the court does not grant joint custody under this subsection, the court shall cite clear and convincing evidence . . . that joint custody is unreasonable and . . . the legal custodial relationship between the child and parent should be severed." Iowa Code § 598.41(2)(b). A district court can either grant joint legal custody, with the equal rights to parents that it entails, or sever the legal custodial relationship as to one parent.

The code does not permit an unequal distribution of decision-making authority, or an unbundling of decision-making authority, when both parents retain joint legal custodian powers. In *Harder v. Anderson, Arnold, Dickey, Jensen, Gullickson & Sanger, L.L.P.*, a noncustodial parent who had joint legal custody sought to obtain her children's mental-health records over the objection of the custodial parent. 764 N.W.2d 534, 535 (Iowa 2009). The Iowa Supreme Court ruled, "When joint legal custodians have a genuine disagreement concerning a course of treatment affecting a child's medical care, the court must step in as an objective arbiter, and decide the dispute by considering what is in the best interest of the child." *Id.* at 538. We have found that "educational decisions fall within this category." *In re Marriage of Bakk*, No. 12-1936, 2013 WL 5962991, at *2 (Iowa Ct. App. Nov. 6, 2013) (considering whether a child should have to attend educational

activities in daycare); *see also In re Marriage of Laird*, No. 11-1434, 2012 WL 1449625, at *2 (Iowa Ct. App. Apr. 25, 2012) (stating the *Harder* analysis "applies equally to decisions concerning a child's education" and considering the child's best interests in selecting the school district for the parties' child to attend).

Also, in *Gaswint v. Robinson*, No. 12-2149, 2013 WL 4504879, at *5 (Iowa Ct. App. Aug. 21, 2013), joint legal custodians could not agree on where the children should attend school. This court cited *Harder* and concluded the district court properly made a determination based on the best interests of the children, as the parents, who had a right to "equal participation" in the issue, had reached an impasse. *Id.*

As a result, Rachael should not have been granted the ultimate decision-making authority within an award of joint legal custody. We modify the decree to eliminate this language.

## B.     Property Distribution

David challenges several portions of the district court's property division. Upon dissolution of a marriage, marital property is divided equitably based on the factors found in section 598.21(5). *In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007). Such division depends on the unique circumstances of each case. *Id.* "An equitable division is not necessarily an equal division." *Id.*

"Ordinarily, a trial court's valuation will not be disturbed when it is within the range of permissible evidence." *Id.* "Although our review is de novo, we ordinarily defer to the trial court when valuations are accompanied by supporting credibility findings or corroborating evidence." *Id.*

### 1. Woodward Property Value

David contests the valuation of his business property in Woodward. Specifically, he claims the district court should not have awarded him both the full value of the property and insurance proceeds related to damage the property sustained in the 2020 derecho. He contends the insurance proceeds are meant to restore the property's value and thus the property value as it currently stands is substantially lower than the court determined. He also claims the district court should have reduced the value of the property by $85,000, which he claims is the amount outstanding on the property's mortgage. By reducing the value of the property by the amount of the mortgage and insurance proceeds, David suggests the property has a negative value.

The court relied on an affidavit from Kevin Crowley, a realtor, to determine the value of the Woodward property. This affidavit is the only independent evidence of the property's value.[3] The value was given after the August 2020 derecho. Given the lack of other credible evidence, the court properly accepted the value Crowley suggested. Crowley noted, "I am also aware of the impact of the August 2020 derecho on commercial buildings and valuations, if any. Based on the current information for [the Woodward property], if the building is damaged, it does not impact my opinion of the value of $205,092." The insurance proceeds are not necessary to restore the building to the value Crowley identified. The district court's determination is supported by credible evidence.

---

[3] In his affidavit of financial status, David valued the property at $121,000, although he did not provide any documentation to support that value.

As for David's assertion that the district court should have reduced the mortgage of the property by $85,000, David did not offer any independent evidence that such figure represented the debt against the property. The district court reduced the value by $78,662.00 as representative of the mortgage debt.[4] This number is slightly greater than what David represented to be the mortgage on his financial affidavit. We find the value used by the district court to be supported by substantial evidence. We affirm the district court's valuation of the Woodward property.

### 2. Medical School Debt

David claims the district court wrongly treated Rachael's medical school debt as a marital asset in its division of property.[5] Rachael and David married in 2002. Rachael graduated from medical school in 2005.

"Debts of the parties normally become debts of the marriage." *In re Marriage of Sullins*, 715 N.W.2d 242, 251 (Iowa 2006). Most of the student debt was accrued during the marriage.[6] Furthermore, the education Rachael obtained through those loans enhanced her earning capacity. *See In re Marriage of Deol*, No. 09-0909, 2010 WL 2925147, at *3 (Iowa Ct. App. July 28, 2010). Markedly, the income Rachael obtained from her education was used to build up David's

---

[4] David's financial affidavit, signed on the morning of the first day of trial indicates the mortgage indebtedness is $76,063.31.

[5] The student debt was awarded solely to Rachael. David contests its inclusion as marital property to be divided by the dissolution because it permitted Rachael to take more assets while retaining equal net property.

[6] We note that whether property was acquired prior to marriage is not solely dispositive as to whether it should be distributed upon dissolution, although it is relevant. *See* Iowa Code § 598.21(5).

business. *See id.* Given these facts, we determine that equity requires Rachael's medical school student loan debt be included in the property division.

### *3.* Retirement Account

David argues the district court should have divided Rachael's 401(k) retirement account separately from the rest of the property "based on the tax implications." However, in the single paragraph devoted to this argument, David cites no authority supporting the proposition that the court should divide the property separately from the rest of the dissolution property division.[7] "Failure to cite authority in support of an issue may be deemed waiver of that issue." Iowa R. App. P. 6.903(g)(3); *see also Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) ("To reach the merits of this case would require us to assume a partisan role and undertake the appellant's research and advocacy. This role is one we refuse to assume."). Further, the record before this court is void of any evidence on the tax consequences of the division of Rachael's 401(k). We affirm that portion of the district court ruling.

---

[7]This court has noted:
> Pension rights are not easily valued. Consequently, the preferred method of valuation of these benefits is, as here, to divide a plan through a qualified domestic relations order which, in essence, separates the pension rights into two separate accounts. This makes valuation of the pension unnecessary, allows the court to allocate other assets equitably, and assures similar retirement security for both spouses. However, such a division of pension benefits is not an absolute requirement. The allocation of a pension, like the allocation of all other property interests, comes only after the pension has been considered in the overall scheme of an equitable division.

*In re Marriage of Fall*, 593 N.W.2d 164, 167 (Iowa Ct. App. 1999) (internal citations omitted).

#### 4. Guns and Tactical Gear

David contests the district court awarding Rachael guns, ammo, magazines, tactical gear, and a generator.[8]  Rachael claimed that David had those items in his possession because they were missing from the familial home after they separated.  David responds by noting there was no evidence that the missing items were in his possession.  He asks this court to allow the guns—which he claims are registered in his name—to remain in his possession, and that "[a]ny other property alleged to be in his possession . . . should be awarded to Rachael, as there is no evidence to the contrary that these items left the marital home."

David acknowledges in his appellate brief that "[t]here was conflicting testimony regarding the guns."  The district court noted that Rachael credibly testified "about what items she wanted, how they were registered, and if these items were in her possession or in David's possession."  We give weight to the court's credibility determinations.  *See Hansen*, 733 N.W.2d at 690.  As such, we affirm the court's property division as it relates to this property.

#### 5. Miscellaneous Personal Property

David claims the district court disregarded the difference in personal property awarded to each party, resulting in Rachael obtaining $85,000 more in property.  The district court expressly found "Rachael provided credible supporting documentation and/or testimony supporting the values included in her Affidavit of Financial Status."  This tracks with the district court consistently finding Rachael to

---

[8] The contested items include three guns, a gun case, several gun magazines, gun ammunition, and a tactical helmet and vest.

be the more credible witness.[9]  Conversely, "David provided no listing of any items that he wanted, nor did he provide realistic values for the same."[10]  Given the district court's well-supported credibility determinations, we decline to alter its property division as to the miscellaneous personal property.

### C.    Spousal Support

The district court ordered Rachael to pay David $3000 a month for forty-eight months in spousal support.  In doing so, the court emphasized the significant award David received in the property distribution, the lack of sacrifices he made to further Rachael's earning capacity, and his capacity to earn a salary similar to his standard of living pre-dissolution.  The court found the award "will assist David in transitioning from his current lack of a business model to a concrete, realistic business model.  The transition once complete should improve his earning capacity. . . ."

On appeal, David requests an award of permanent spousal support at a rate of $11,625 a month.[11]  To justify the award, he points to the nineteen-year length of the marriage, the large disparity in earning capacity, and his need for the award to maintain the lifestyle he grew accustomed to during the marriage.

---

[9] The court found Rachael to be more credible in determining the value of the Woodward property and the marital home.  In contrast, David "could not accurately recall or provide credible documentary evidence establishing [his] business's assets."

[10] In the court's ruling on David's motion to reconsider, it noted, "David's testimony on the household contents lacked credibility, was incoherent . . . [and included] conflicting testimony about what he thought was personal property and what he thought was business property.  His [exhibit delineating what property remained in the home and its value] was not credible."

[11] At trial, David requested a permanent award of $10,000 per month.  In his rule 1.904 motion, he requested $5000.00 for seven years.

"Our cases repeatedly state that whether to award spousal support lies in the discretion of the court, that we must decide each case based upon its own particular circumstances, and that precedent may be of little value in deciding each case." *In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015). We must "closely examine all the statutory factors [(in Iowa Code section 598.21(3))] and the entire record in each case." *Id.*

Spousal support is generally broken down into four distinct categories—traditional, rehabilitative, reimbursement, and transitional—but our supreme court has also recognized that hybrid awards may be appropriate. *See In re Marriage of Pazhoor*, 971 N.W.2d 530, 546-47 (Iowa 2022) *as amended* (Apr. 6, 2022), *reh'g denied* (Apr. 6, 2022) (finding a hybrid traditional-rehabilitative award for a seven-year period was appropriate).

> We conclude that formal recognition of transitional alimony will assist the bench and bar. There are inequities in dissolution beyond a spouse's "economic sacrifices" that "directly enhance[d] the future earning capacity of the other," a spouse's need for education or retraining to become self-sufficient, or a spouse's responsibility to support the other "so long as a dependent spouse is incapable of self-support." There may be a need for short-term support in some cases to help "transition from married life to single life." Transitional alimony can ameliorate inequity unaddressed by the other recognized categories of support. Divorcing spouses must adjust to single life. If one is better equipped for that adjustment and the other will face hardship, then transitional alimony can be awarded to address that inequity and bridge the gap. We now formally recognize transitional alimony as another tool to do equity.

*Id.* at 541–42 (internal citations omitted).

While we must examine the facts of each case closely, we find *Pazhoor* instructive. In that case, one spouse, a physician, earned roughly $500,000 a year. *Id.* at 535. The other spouse, who predominately stayed at home with the children

but had a medical degree, had income of roughly $23,000 a year. *Id.* Despite the seventeen-year marriage and difference in earning capacity, the court determined the economically dependent spouse could earn enough to maintain a standard of living similar to the pre-dissolution standard after a brief period of reschooling. *Id.* at 543 (finding a lifetime award was inappropriate given the spouses "age, health, potential earnings, and the seventeen-year duration of their marriage"). The supreme court awarded the spouse transitional alimony of $8500.00 monthly for a period of seven years. *Id.* at 546.

Here, the district court found Rachael earned roughly $440,000 per year.[12] In contrast, David has not drawn income from his business since 2010, reinvesting it in his business instead. Because David does not dispute the district court imputing him an earning capacity of $50,000, we utilize that figure. We agree with David that the difference in earning capacity and length of marriage warrants an increase in the spousal support award. *See id.* at 542–43. And while David was awarded a substantial sum in the property division, that "award does not overshadow [Rachael's] comparatively large earning capacity." *See id.* at 542.

Despite some factors supporting an increase in the award, other statutory factors suggest a permanent award is unnecessary. David has reinvested the profits into his business. And while he cannot presently support himself at a standard of living comparable to that he experienced pre-dissolution, he could

---

[12] We recognize David's argument that Rachael's earning capacity is closer to $500,000, since she voluntarily reduced her income by giving up her job as a medical director to spend more time with the children. *See Gust*, 858 N.W.2d at 411 ("[W]e focus on the earning capability of the spouses, not necessarily the actual income"). However, that would require Rachael to work more than one full-time job, which we will not require.

draw income from his business or shift careers back into sales. Further, the amount he requests is unnecessary to support the standard of living he was accustomed to during the marriage. And the spouse in *Pazhoor* had not worked outside the home since the birth of the children. *Id.* at 535. David has not left the workforce.

> Transitional alimony is not needed when the recipient has sufficient income or liquid assets to facilitate the change to single life. We decline to require a showing of undue hardship and instead rely on district courts to do equity when awarding transitional alimony to "bridge the gap" from married to single life.

*Id.* at 545.

Given the factors outlined above, we determine a transitional award is appropriate. We find an award of $5000 a month for seven years is appropriate to address the inequity and bridge the gap, assisting David with the transition from married to single life. That award will provide David time to build his business and draw sufficient income to maintain a comparable standard of living to what he enjoyed during the marriage. He expressed no intent to return to school or the need for additional education. He is living in an apartment and looking to purchase a home. This transitional support will also provide time for him to rejoin the workforce in a sales position similar to what he worked in before the family's return to Iowa. Rachael can pay such an award, and even after increasing David's income, the disparity in earning capacity will remain great. *See id.* at 546. Accordingly, after review of the factors in Iowa Code section 598.21A(1) and consideration of the goal of spousal support, we determine that an award of $5000 per month for seven years does equity between the parties.

### D. Attorney Fees

David contends the district court abused its discretion when it declined to award trial attorney fees.[13] He claims the court should have awarded him $20,000. "Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *Sullins*, 715 N.W.2d at 255. The district court found, "David presented no evidence of his attorney fees at trial. His Affidavit of Financial Status shows no outstanding attorney fees. Rachael and David should each pay their own attorney fees if any remain unpaid, as both are capable of doing so." We find neither party showed they were entitled to trial attorney fees. We affirm the trial court in this regard.

Both parties request appellate attorney fees. This court lacks the information necessary to determine an appropriate award of appellate attorney fees. Such awards "are not a matter of right," but depend on "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005) (citation omitted). Neither party submitted evidence of the attorney fees they incurred on this appeal. Both parties prevailed to some extent on appeal. However, given the disparity in income, we determine David is entitled to an award of appellate attorney fees. We conclude Rachael is not entitled to appellate attorney fees. While we would prefer to set those fees rather than require the

---

[13] Rachael suggests this issue is not preserved for our review. However, she acknowledges that it was an issue listed for trial and that the district court ruled on the matter. Because the matter was raised before the district court and ruled upon, the issue is preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

district court to do so, given the lack of an attorney fee affidavit or other supporting documentation from David, we are left with a remand as an option. We remand to the district court to determine an appropriate award of appellate attorney fees for David and enter judgment in his favor in that amount.

### E.    Conclusion

We affirm the court's award of joint legal custody as modified by eliminating the language that granted Rachael tie-breaking authority. We affirm the district court's determinations as to the property distribution between the parties. We modify the court's award of spousal support to David to increase the award of spousal support to $5000 a month for seven years. Finally, we affirm the denial of David's request for attorney fees and remand for the district court to set a reasonable award of appellate attorney fees for David.

**AFFIRMED AS MODIFIED AND REMANDED.**